CARLTON R. SEARLES, Petitioner-Below, Appellant, v. J. FRANK DARLING and JAMES F. HEARN, AUGUST F. WALZ, EDWIN F. KOESTER, constituting the Board of Adjustment of the City of Wilmington, Respondents-Below, appellees.

(*August* 7, 1951.)

WOLCOTT and TUNNELL, Justices, and LAYTON, J., sitting.

*William E. Taylor, Jr.,* for Appellant.

*David F. Anderson* (of Berl, Potter and Anderson) for J. Frank Darling, Appellee.

August F. Walz for James F. Hearn, Edwin F. Koester, and himself, constituting the Board of Adjustment of the City of Wilmington, Appellees.

Supreme Court, No. 5, February Session, 1951.

TUNNELL, J., delivering the opinion of the Court:

J. Frank Darling, one of the appellees, proposes to build an apartment house in Wilmington, and nearby, at 1701 Hancock Street, as an incident to the apartment house enterprise, an eight-story garage. There is no difficulty about the apartment building; this case concerns the garage. The problem arises because the lot where Darling has applied for permission to build his garage is within a district zoned as residential.

Attending first to the sequence of events, the record reveals that after Darling had proposed to construct the apartment house, but before the architect's plans were drawn, he purchased 1701 Hancock Street with the thought that it would be a suitable site for a garage to serve the occupants of the apartment building. Although this lot was within a territory which had been zoned as residential many years prior to Darling's purchase of it, it had always theretofore been devoted to a non-conforming use. It was, in fact, occupied by twenty-six small single-story garages and a two-story stable. Darling's application was for permission to raze all of the structures presently on the lot and to build the garage in their place.

Following the procedure prescribed by the Building Zone Ordinance, Darling first applied to the building inspector, submitting his plans and specifications, but, since the application was for a non-conforming use, the inspector denied the application as a matter of course. Thereupon, Darling appealed to the Board of Adjustment of the City of Wilmington, and on January 18, 1950, after due notice, the Board of Adjustment viewed the premises and conducted a full hearing of all interested parties. There is no indication in the record as to what witnesses were heard or what was the nature of their testimony. On the 25th day of January, 1950, the Board of Adjustment entered a formal order granting Darling's application, but imposing upon the permit the applicant's own proposed condition that the building must be used exclusively for the "storage or garaging" of motor vehicles of or for the tenants of the apartment building.

After entry of the Board's order, Carlton R. Searles, a taxpayer in Wilmington, petitioned the Superior Court for a writ of certiorari. In petitioning for the writ, he joined as respondents the applicant, J. Frank Darling, and also the three members of the Board of Adjustment. On May 15, 1950, the matter came on for hearing before the Superior Court. After examining the record, hearing additional testimony and receiving in evidence certain exhibits, on August 25, 1950, the Superior Court affirmed the order of the Board of Adjustment.

The appellant has now sued out in this court a writ of error to the Superior Court for review of the proceedings below.

Municipal zoning in Delaware is by authority of a general enabling act, the most recent version of which was enacted on April 26, 1934, and appears as paragraphs 6228-6236, *Revised Code of Delaware* 1935. This enabling act is an amended draft of the model act[1] originally sponsored by the Federal Depart-

---

[1]For a brief history of the Standard State Zoning and Enabling Act and the text thereof, see The Law of Zoning, Metzenbaum, Chapter XII, pages 303-309.

ment of Commerce. Since this model act was promptly adopted verbatim by approximately two-thirds of the states in the United States, and has been adopted by some others with modifications, it is a relatively simple matter to find judicial precedents for the problems here presented.

Darling's was an application for a variance, and as such, was necessarily directed to the Board of Adjustment under the provisions of the Building Zone Ordinance. The Board of Adjustment by Section 14 of that ordinance is given jurisdiction, upon a proper showing, to grant permission to extend a non-conforming use of property, to change one non-conforming use to another non-conforming use, or otherwise to suspend or vary the effect of the general zoning regulations in respect to individual properties within categories specifically defined by the ordinance. Section 14, however, contains this general provision, which constitutes a prerequisite to the granting of any such variance in any of the permitted categories: "Such board may, in particular cases where unnecessary hardship would otherwise result, authorize variance from the terms of this Ordinance in harmony with its general purpose and intent and with the public interest; * * * "

In order to authorize any variance, it is essential for the Board first to determine whether adherence to the strict terms of the ordinance would produce "unnecessary hardship". If that *sine qua non* is present, then it is necessary to test the validity of the proceeding by measuring it against the several secondary requirements.

The record sent up to the Superior Court by the Board of Adjustment in response to the writ of certiorari consisted of the appeal from the building inspector, a copy of the public notice of the hearing before the Board, a protest signed by objecting property owners, and a formal order entered by the Board disposing of the case. This order contained a statement that the application had been made by Darling, a recital of the dimen-

sions of the lot known as 1701 Hancock Street, together with the dimensions of the marginal spaces which would be left on the lot at the sides and in the rear after construction of the proposed garage, a statement that the lot presently contains twenty-six garages and a two-story stable, and a finding that the proposed use would be of substantially the same character as the previous use but would not be more detrimental. The following paragraph in the order contains the only language in the record sent up by the Board referring to evidentiary facts on the issue of unnecessary hardship: "Further Resolved, that in the event the proposed building and the use thereof should be considered a variance from the terms of the Zoning Ordinance, this board finds from the circumstances and evidence presented, and after a full hearing of all interested parties, upon due and proper notice, and after viewing the premises, that unnecessary hardship would otherwise result unless the applicant is permitted to construct the proposed building for the proposed use; * * * "

The standard by which we are to measure the sufficiency of this record is not the one which would be applied in a common law certiorari proceeding, but the one established by the enabling act. We refer particularly to the following sentences appearing in *Para. 6234, Sec. 7, Revised Code of Delaware*, 1935: "The Board of Adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by such writ. The return shall concisely set forth such other facts as may be pertient and material to show the grounds of the decision appealed from and shall be verified."

It is apparent at a glance that the record sent up in this case by the Board of Adjustment fails to comply with the mandate of the Statute. It includes a fair statement of the conclusions of the Board, but omits the facts "material to show the grounds" for those conclusions. The Board's record, therefore,

contains in it no basis for review. By reference to it no court can determine whether the Board correctly or incorrectly applied the law to the facts, or whether, as is here charged, the Board's finding constituted an abuse of discretion.

■ Appellees invoke the general rule that there is a presumption of regularity which follows such proceedings as those before the Board of Adjustment. Differently stated, this rule enjoins a court of record against substituting its judgment for the judgment of the Board of Adjustment. See *Yokley's Zoning Law and Practice, Sec.* 164. This principle, however, does not apply in such a way as to waive the inclusion of indispensable features in the record. If such were the case, there could be no review. If the Board has committed errors of law, the proceeding will not be validated by omitting from the record those portions containing error, in reliance upon the presumption of regularity. The courts asserting this presumption rule have plainly so indicated. Many courts have discussed this principle, but nobody has expressed it better than Chief Justice Cardozo did in the case of *People ex. rel. Fordham Manor Reform Church v. Walsh,* 244 *N. Y.* 280, 155 *N. E.* 575, 578, where that learned jurist said: "We thwart the scheme of the statute if we uphold a resolution for the concession of a privilege with neither evidence at the hearing, nor allegations in the answer to be accepted as a substitute for evidence. The Legislature has said that there shall be review by certiorari. *Greater New York Charter,* § 719-a. Such review becomes impossible if without supporting evidence or equivalent averment the mere conclusion of hardship is sufficient and indeed decisive."

Also, see *Heath v. Mayor and City Council of Baltimore,* 187 *Md.* 296, 49 *A.* 2d 799; *Hopkins v. Board of Appeals of the City of Rochester,* 178 *Misc.* 186, 33 *N. Y. S.* 2d 396; and cases collected in 168 *A. L. R., page* 137.

Authorities differ as to whether these proceedings in Statutory certiorari come on for trial *de novo* or simply for a modi-

fied form of review after the manner of appellate courts. The case of *Park Ridge Fuel and Material Co. v. City of Park Ridge,* 335 *Ill.* 509, 167 *N. E.* 119, represents one extreme, the court there holding that, once the writ is sued out, the proceedings come before the court of record for trial *de novo.* On the other hand, other courts have held that the court of record on certiorari may confine the evidence before it to such testimony as the party failed, without fault, to introduce below. *Dorman v. Mayor and City Council of Baltimore,* 187 *Md.* 678, 51 *A.* 2d 658.

We do not entirely agree with either of these views. The fact that the statute says that the evidence taken before the court of record shall constitute "a part of the proceedings upon which the determination of the court shall be made" causes us to believe that a proper record sent up by the Board would be a factor often controlling the disposition of the case by the Superior Court, but necessarily would not always constitute the entire basis for decision. If the record below shows that there was substantial evidence upon which the Board could properly have based its decision, while correctly applying the law to the facts, it would be the duty of the court to sustain the Board, even though the court would have decided otherwise had the matter come before it in the first instance. That is to say, the record sent up by the Board would control the issue unless there was abuse of discretion or error of law. This is the view adopted in a majority of states and favored by the textbooks. *Yokley, Zoning Law and Practice,* Sec. 154; *McQuillin, Municipal Corporations* (3rd Ed.) *Vol.* 8, Sec. 25.336; and cases collected in 168 *A. L. R. pp.* 142-144. In our case, however, as we have seen, this question is virtually moot, because there was nothing sent up by the Board which could be of assistance to the court.

Under the view of the matter adopted by the courts of New York, where the record does not include the facts material to show the grounds of the decision, the court of record will remand the matter to the Board of Adjustment for further proceedings, instead of hearing evidence itself. *Hopkins v.*

*Board of Appeals of Rochester,* 178 *Misc.* 186, 33 *N. Y. S.* 2d
396. But we see nothing in the Delaware statute giving the Su-
perior Court the authoriy to remand the proceeding. The stat-
ute simply says that the court "may reverse or affirm, wholly or
partly, or may modify the decision brought up for review". We
think that the Superior Court did the only thing it could do in
this instance when it heard such material evidence as the parties
offered. Nevertheless, the case at bar is peculiar, and certainly
departs from the procedure contemplated by the Legislature, in
that the testimony heard by the Superior Court below consti-
tutes the sole source of enlightenment in the record before us
on this vital question of unnecessary hardship.

Darling himself was the only witness as to hardship.
He testified that he considered that it would be a hardship to
have his application denied because he had bought this lot in
the hope and expectation that a variance would be granted, and
he saw no reason, in view of its present use, why it should not
be granted. Counsel, of course, did not, and could not, seriously
press such a contention. As a matter of fact, the circumstance
that Darling bought this lot after it had been zoned for resi-
dential purposes is itself almost, if not quite, sufficient to pre-
clude the possibility of his being granted a variance. Normally
a variance is not available to a person in such circumstances.
*Application of Devereux Foundation,* 351 *Pa.* 478, 41 *A.* 2d 744.
But some cases take the more liberal view that while the fact
that a person bought his property after the zoning restrictions
were placed upon it does not altogether foreclose such an appli-
cation, it nevertheless, causes it to be looked upon initially with
much disfavor. *Greenwich Gas Co. v. Tuthill,* 113 *Conn.* 684,
155 *A.* 850, 928. We entertain this latter and more liberal view.
We are inclined to regard the property itself as a permanent
entity and the current ownership merely as a passing phase. We
hesitate to lay down a rule that Darling's property, by his pur-
chase of it, became positively ineligible for a variance. We simp-
ly say that by so recently becoming the owner he lacks some

of the equities which might have been present if the zoning restrictions had been imposed upon it during his ownership. This consideration, however, is not dispositive of the case.

The second type of hardship Darling asserted was that he had to have a garage somewhere as an incident to his apartment house, and that 1701 Hancock Street would be a suitable spot. This contention was wholly unsupported by figures or further specific facts, but even had it been so supported, as we view the law, his claim would have been vulnerable to two types of attack, either of which would have been fatal.

In the first place, Darling's position, fairly and simply interpreted, is that this variance would be of substantial economic advantage to him, or, conversely, that denying it would create economic hardship. Obviously, if the whole aim of a zoning plan is not to be abruptly defeated, people cannot be granted permits to vary zoning ordinances whenever they believe and are willing to testify that it will pay them to apply their properties to a variant use. Virtually all applicants would so testify. Moreover, the courts, as a matter of legal principle, do not grant variances based upon a simple claim of economic advantage, and most especially not unless there is proof that it is impracticable to adapt the property in question to a conforming use. The authorities so holding are innumerable. See *McQuillin, Municipal Corporations*, (3rd Ed.), *Vol.* 8, Sec. 25.168; *Anno.* 168 *A. L. R.* 30. There is not only no such evidence of inability to use this property for a conforming purpose in this record, but the possibility that such is the case is removed by Darling's testimony that there is no hardship here involved except what we have already summarized.

Further, we also conceive it to be necessary in a matter of this kind for the applicant to establish that the hardship on which he relies is some factor peculiar to his property. Otherwise, instead of the granting of a variance, obviously what is needed is legislative action; the zoning ordinance itself should

be amended so as to provide the remedy needed by all persons similarly situated. It is of the essence of a sound application for variance that the circumstances must be peculiarly oppressive to the applicant's property. The courts have uniformly so held. *McQuillin, Municipal Corporations,* (*3rd Ed.*), *Sec.* 25.167. Here, however, Darling admitted that other properties might be suitable for his garage.

Further, the hardship wrought by the zoning ordinance must not only be peculiar to the applicant's property, but it must relate to the particular property of the applicant for which he seeks the variance. Here applicant contends that it is a hardship not to be able to build a garage in connection with his apartment house, so that, as a matter of fact, the hardship asserted is suffered by the apartment house property, not by 1701 Hancock Street. So strictly do the courts construe any grant of jurisdiction to break down, even in isolated cases, the uniformity which is the essence of a zoning plan, that any application for variance will be denied unless it comes fully and fairly within the exception on which it must rest.

A case which appears to be precisely similar to our own in this respect is that of *Brackett v. Board of Appeal of Boston,* 311 *Mass.* 53, 39 *N. E.* 2d 956, 960. There the Supreme Judicial Court of Massachusetts had before it on review an application originally made by the Sheraton Hotel in Boston for permission to establish a parking space about one hundred feet from the hotel, but within the limits of a district zoned as residential. There were present several aspects of genuine hardship, not only to the hotel but to the public as well. Nevertheless, deciding against the hotel, the court there said: "The predicament of the corporation appears to be an incident of the location of its hotel, something quite apart and distinct from its predicament as the owner of the premises in question that were purchased by the corporation 'in order to take care of its parking problem,' thinking it could go through the proper channels in order to get relief. In our opinion the 'practical difficulty or unnecessary

hardship' must relate to the premises for the benefit of which a variance is sought."

In respect to this legal principle that the unnecessary hardship must be peculiar to the applicant's property, therefore, there has been a double failure.

Manifestly the record before us fails to support a finding of unnecessary hardship, a finding which must constitute the foundation of any action favorable to the application. It is, therefore, not necessary to consider the other assignments of error. The judgment of the Superior Court must be reversed.