**Stella L. MAVRANTONIS, Appellant,**

**v.**

**BOARD OF ADJUSTMENT OF the CITY OF WILMINGTON, Delaware.**

Superior Court of Delaware.

New Castle.

Oct. 20, 1969.

C. Waggaman Berl, Jr., of Booker, Leshem, Green, Shaffer & Berl, Wilmington, for appellant.

Joseph H. Flanzer, of Flanzer & Isaacs, Wilmington, for Board of Adjustment of the City of Wilmington.

STIFTEL, President Judge.

Baynard Court, Inc. ("Baynard") wants to build a twelve story apartment building on the easterly side of the 2300 block of Baynard Boulevard. The building will be more than 112 feet high. Section 046.1 of the Revised Building Zone Ordinance of Wilmington [1] requires that the side yard setback be one-sixth of the height of the nearest outside wall of the building. To comply with this formula, the side yard setback must be eighteen feet eight inches.

Baynard petitioned the Building Inspector's Office for a variance from the 18'8" sideline required by Sec. 046.1 to permit a 12' side yard setback for the first two floors of the building and an 8' setback from the third floor upward, so as to allow for balconies for the apartments on those floors. The Building Inspector's Office denied the request. Baynard appealed. After notice to affected property owners, the City of Wilmington Board of Adjustment heard the appeal on November 26, 1968. Many objectors appeared. On January 22, 1969, the Board, by written decision, reversed the Building Inspector's Office and granted the variance. From this decision, Stella L. Mavrantonis, an objecting next-door neighbor, appealed to this Court.

The Board is authorized under Section 134 [2] to grant a variance from the

1. "046.1. Two side yards shall be provided on lots in Residence Districts as prescribed in the following table, subject to the special paragraphs of this Section:
   District
   "R–5–B, R–5–C
   *Minimum width of each side yard* at the ground level or at any setback level one-sixth of the height of the nearest outside wall of the building, measured in each case from the average level of the finished grade along the side of the building, but in no case less than 5 feet."

2. This section of the Ordinance was enacted pursuant to the enabling act, 22 Del.Code § 327, see Application of Emmett S. Hickman, Del., 108 A.2d 667, 673. § 327(a) (3) reads as follows:
   "(a) The Board of Adjustment may—
   *       *       *       *       *       *
   "(3) Authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the

terms of the Wilmington Revised Building Zone Ordinance

"where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of adoption of this Ordinance or by reason of exceptional topographic conditions or under extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation would make it impractical for the owner to use said piece of property for a proposed principal building or buildings accessory thereto in conformance with those requirements of this Ordinance and thus would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property; provided such variance may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the Ordinance."

█ If the record below shows that there was substantial evidence upon which the Board could properly have based its decision, while correctly applying the law to the facts, it is the duty of this court to sustain the Board. See Searles v. Darling, 7 Terry 263, 83 A.2d 96, 99.

█ Under Section 134, the owner has the burden of establishing that the required side yard setback (Sec. 046.1) to his proposed building would result "in peculiar and exceptional practical difficulties or exceptional and undue hardship", see 1 Cooper, State Adm.Law, Ch. XII, pp. 355–356, and that the granting thereof would not be detrimental to the public good. Does the Board of Adjustment record show that applicant sustained this burden?

No one appeared for petitioner before the Board except its President, Joseph M. Remedio, and its attorney. Mr. Remedio said little. He answered some questions of the objectors about garages in the rear that were to be torn down, why there were no balconies on the first two floors and the type of people he expected to rent the apartments. Anything else in support of the petition was said by its attorney.

This method of presentation was criticized in Rollins Broadcasting of Delaware, Inc. v. Hollingsworth, Del., 248 A.2d 143, at pp. 144 and 145, wherein the Court said:

"At the hearing before the Board, Rollins called no witnesses in presenting its case in chief; its presentation at that stage consisted only of an oral statement by its attorney, summarizing the proposal for the erection of the tower and the reasons for selecting the site here in question. No drawing of the proposed tower, or other evidence verbal or documentary, was submitted.

\* \* \* \* \* \*

"Rollins, as applicant for the special exception, had the burden of meeting the requirements set forth in the Code as the grounds for the exception. Application of Emmett S. Hickman Co., 10 Terry 13, 108 A.2d 667 (1954). This Rollins was obliged to do by substantial evidence, verbal or documentary, susceptible of cross-examination and rebuttal by opponents and of appellate review by the courts. Attorneys' letters, arguments of counsel, unsigned reports, and unsupported, unauthenticated drawings do not constitute such evidence."

█ The attorney gave no testimony but he presented arguments in favor of the variance. In essence, he said that the apartment building would aesthetically improve the general area surrounding it and that real property in the immediate area would increase in value. None of his remarks were subject to cross-examination. They were speculative prognostications. The attorney also claimed that the present side yard setback requirement worked an

ordinance will result in unnecessary hardship, and so that the spirit of the ordi-

nance shall be observed and substantial justice done."

economic disadvantage to his client. This does not show hardship. A variance is not justified merely because an applicant would be better off economically with one than without one. Searles v. Darling, *supra,* 83 A.2d at p. 99; Appeal of Blackstone, 8 W.W.Harr. 230, 190 A. 597, 606. The applicant must show circumstances which are peculiarly oppressive to its property and must show the hardship which exists relates to the particular property for which the variance is sought. Application of Emmett S. Hickman, 10 Terry 13, 108 A.2d 667, 675; Searles v. Darling, 7 Terry 263, 83 A.2d 96, 99. This, of course, was not shown. There was no indication that this land was any different than the lands adjoining. The hardship Baynard suffers falls upon all his neighbors alike. In fact, his variance to 8 feet in all probability precludes his adjoining neighbors from similar treatment if they wish to build similarly.

 The ordinance did not give the Board power to do whatever it feels inclined to do regardless of the evidence. Side yard setback provisions should not be dealt with by the Board in a perfunctory manner. There are sound reasons for side yard requirements, e. g., prevention of fire hazards. There must be space for fire equipment. This is especially true where a building is a 12 story one, as is contemplated here. Aesthetics, simplification of drainage problems, and access to adequate light and air are other reasons. See City of Cleveland v. Young, 236 Miss. 632, 111 So.2d 29, 31; 2 Yokely, Zoning and Practice, § 17.5. The dominant design of the Zoning Code is to promote the general welfare, and to protect and promote the health and safety of the affected people. Stability of the neighborhood and consideration of the property of people in the vicinity of the proposed apartment house are important considerations.

The record fails to contain substantial probative evidence that justified the Board in granting the variance. This is true, even if petitioner's attorney's arguments were allowed to be considered as a part of the evidence, which, of course, they cannot be. Furthermore, there was no finding by the Board of "peculiar and exceptional difficulties to, or exceptional and undue hardship upon" Baynard, which constitutes the foundation of any action favorable to the application, see Searles v. Darling, *supra*, 83 A.2d at p. 101.

This case is remanded to the Board of Adjustment for appropriate action in conformity with this opinion.

It is so ordered.