Whitfield E. **WARMOUTH**, Appellant,

v.

**DELAWARE STATE BOARD OF EXAMINERS IN OPTOMETRY,**
Appellee.

Superior Court of Delaware,
Kent County.

Submitted: March 6, 1985.
Decided: March 6, 1985.

Nicholas H. Rodriguez, Schmittinger & Rodriguez, P.A., Dover, for appellant.

Edward F. Kafader, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

BUSH, Judge.

This is an appeal by Dr. Whitfield E. Warmouth from a decision of the Delaware State Board of Examiners in Optometry ("Board") revoking his certification of registration to practice optometry for five years followed by fifteen years probation.

Prior to the Board's action, Dr. Whitfield E. Warmouth was convicted of two counts of sexual assault in the Court of Common Pleas. The two counts which were tried together were the result of complaints by two patients of Dr. Warmouth's. One patient charged him with sexual contact on December 8, 1981; the other charged him with sexual contact on June 7, 1983. Each information filed in the Court of Common Pleas alleged that Dr. Warmouth "placed his naked penis in contact with the hand of [the patient], knowing that the contact occurred without the consent of [the patient], in violation of 11 *Del. C.* § 761(2)." The jury returned a verdict of guilty and in March, 1984, Dr. Warmouth was sentenced to pay a fine of $1,000 and was placed on two years' probation with a condition of his probation being that he obtain psychiatric treatment. No appeal was taken from the verdict or the sentence imposed in the Court of Common Pleas.

The Department of Justice then filed a complaint with the Board, pursuant to 24 *Del. C.* § 2101, et seq. The Board was requested to conduct a hearing to determine whether his certificate of registration should be revoked or suspended because of his conviction of two charges of sexual assault and because of unprofessional conduct arising out of these incidents and two other alleged incidents involving two other women.

The Board, consisting of three optometrists, heard the testimony of Dr. Warmouth, his probation officer, and his psychiatrist. The State presented no witnesses, but placed in evidence the two informations and copies of the convictions in the Court of Common Pleas. Also in evidence was a stipulation entered into by the State and Dr. Warmouth stating that pursuant to a prior order of the Board, Dr. Warmouth would not "dispute the facts of his convictions or the underlying facts which gave rise to those convictions as contained in the informations." A prior order of the Board had determined that the doctrine of collateral estoppel barred Dr. Warmouth from relitigating the facts before the Board. As part of the stipulation, the State withdrew the allegations in the complaint before the Board involving the two other women.

The Board's findings of fact stated that it was undisputed that Dr. Warmouth committed the two offenses as charged in the informations; that it was undisputed that Dr. Warmouth has a history of professional and civic achievements; that his psychiatrist was pleased with his progress and that his probation officer believed he was a model probationer; and both felt he would not engage in the future in the type of criminal conduct for which he was convicted.

The Board concluded that Dr. Warmouth's acts justified revocation on three statutory grounds:

(1) the conviction of a crime, pursuant to 24 *Del.C.* § 2113(a)(1);

(2) unprofessional conduct, pursuant to 24 *Del.C.* § 2113(a)(6);

(3) violation of a Board rule or regulation, pursuant to 24 *Del. C.* § 2113(a)(7)(g), specifically Board Rule 4.01 (g) which requires a licensee to "[C]onduct themselves as exemplary citizens."

The duty of the Court in reviewing administrative decisions is to ascertain if the agency's findings are supported by substantial evidence and free from legal error. *Ridings v. Unemployment Insurance Appeal Board,* Del.Super., 407 A.2d 238 (1979). This requires the Court to search the entire record to determine if the agency could have fairly and reasonably reached the conclusion that it did. *National Cash Register v. Riner,* Del.Super., 424 A.2d 669, 674, 675 (1980). If the record below shows that there was substantial evidence to support the decision and the Board correctly applied the law to the facts, it would be the duty of the court to sustain the Board, even though the court would have decided otherwise had the matter come before it in the first instance. *Searles v. Darling,* 46 Del. 263, 83 A.2d 96, 99 (1951). As to discretionary decisions of an agency, the standard is whether the agency acted arbitrarily or capriciously. *Spear v. Blackwell & Son, Inc.,* Del.Super., 221 A.2d 52, 55 (1966).

■ The Court first considers Dr. Warmouth's contention that the Board erred in its pre-hearing ruling which precluded him from contesting and relitigating the factual allegations against him as set forth in the informations. The Board correctly relied on the principle of collateral estoppel which is well-settled Delaware law. *Foltz v. Pullman, Inc.,* Del.Super., 319 A.2d 38 (1974). Dr. Warmouth posits a "general rule" that a judgment of conviction in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered. However, this rule is subject to a number of exceptions and limitations and the trend is in favor of admission of such evidence. *See* Restatement (Second) of Judgments § 85 (1982); 46 Am.Jur.2d Judgments § 618 (1969).

In the instant proceeding, application of such a rule is particularly inappropriate. A conviction of a crime may be the sole basis for revocation of a license under the provisions of 24 *Del. C.* § 2113(a)(1). The use of the word "conviction" declares the conclusive effect which the law already has given to an adjudication of guilt. This Court adopts the reasoning of *South Carolina State Dental Examiners v. Breeland,* 208 S.C. 469, 38 S.E.2d 644 (1946). In a proceeding to revoke a dental license, the *Breeland* court held that the judgment of

conviction of rape was conclusive evidence of the facts involved. In *Breeland* the court stated that the cases supporting the general rule:

" ... involved purely civil actions between private litigants where the rights of the general public were not involved. ... In none of them were the actions quasi public in form and character. The instant action is a special proceeding brought by an agency of the State for the benefit of the general public. The State has a right under its police power to define the qualifications one shall possess in order to engage in the practice of dentistry and, in doing so, may properly require that such a person should not only possess the necessary technical skill, but also the qualifications of honor and good moral character ... Respondent has had his day in court and has been convicted with all the safeguards thrown around a person accused of a crime. The question of his guilt here is precisely the same as was determined adversely to him under circumstances most favorable to himself, that is, in a prosecution in which he could not have been convicted unless his guilt had been shown beyond a reasonable doubt." *Id*, at 647, 648.

Dr. Warmouth also contended that the Board, through a misunderstanding of the principle of collateral estoppel, labored under a misconception that Dr. Warmouth "admitted" the facts and that the prejudice created by this misconception amounted to reversible error. However, there is not one statement in the Board's opinion which suggests the Board thought Dr. Warmouth admitted the facts. The Board, merely repeating the substance of the stipulation, stated that "Dr. Warmouth agreed not to dispute the underlying facts which resulted in his conviction ..." Because of the Board's prior ruling, he had no choice but to agree not to dispute the underlying facts. Furthermore, it is inconsequential whether or not Dr. Warmouth admitted the facts or agreed not to dispute the facts. A twelve-man jury found him guilty and the Board was on solid ground in accepting these convictions as conclusive evidence of the facts as set forth in the informations.

■ Next, this Court considers the contention that the Board found that the sanctions imposed were necessary to protect the public and that this finding was not supported by the evidence. Dr. Warmouth contends that the only evidence on the issue consisted of the uncontradicted testimony of two expert witnesses that Dr. Warmouth would not repeat the conduct for which he was convicted. What Dr. Warmouth characterizes as a factual finding is found in the opinion under "Conclusions of Law" as part of a general discussion of the Board's regulatory responsibility. The Board, in its opinion, stated, "[N]ot only does this responsibility require the Board to uphold and enforce the standards of its profession, it also requires the Board to protect the public from optometric practice which is not in the public's best interest." This Court does not interpret this statement as a factual finding that the public needs to be protected from Dr. Warmouth in the future. The public's best interest can be protected by sanctions which deter similar conduct and which restore trust in the profession by demonstrating that criminal conduct will not be tolerated. Furthermore, the Board's application of a sanction in a disciplinary action is not conditioned on a finding that the individual before the Board presents a continuing threat to society nor did the Board make such a finding. It is clear the Board's conclusion was based on the nature of offenses already committed. It was for the Board to determine the weight, if any, to be given the evidence that Dr. Warmouth was not likely to repeat the offense. In the final analysis, such evidence would seem to be most relevant in deciding whether a permanent revocation is appropriate.

■ It is further contended that it is not the intent of the statute or the Board's regulations to discipline one convicted of a misdemeanor. Sexual assault is a misdemeanor. Dr. Warmouth argues that the provision which allows the Board to revoke a license for conviction of a crime should be limited to the conviction of a felony or

crime involving moral turpitude. Without belaboring the obvious, nonconsensual sexual contact with one's patient may reasonably be seen as an offense involving moral turpitude. Moreover, the Court will not rewrite a statute which uses the unqualified word "crime" to mean crimes except misdemeanors such as sexual assault. Crime includes all grades of public offense, which at common law are often classified as treason, felony, and misdemeanor. *U.S. v. Flores-Rodriguez,* 2d Cir., 237 F.2d 405, 409 (1956) (quoting Webster's Dictionary). The legislature creates a criminal offense when it prescribes a punishment by fine or imprisonment for the performance of an act. *State v. Ross,* Ct. of Gen.Sess., 43 Del. 490, 50 A.2d 410, 411 (1946).

■ In the same vein, Dr. Warmouth argues that the Board's conclusion that he was guilty of unprofessional conduct is not warranted by the conviction of two misdemeanors. The legislature has properly left the definition of unprofessional conduct to the Board who as practicing professionals are uniquely equipped to assess conduct in relation to their profession's standards. Just as there was no question in the minds of the Board that these were acts of unprofessional conduct, the Court can think of few acts by health professionals which fall more clearly within the meaning of "unprofessional conduct." *See* 61 Am.Jur.2d, *Physicians and Surgeons* § 82 (1981); Annot., 15 A.L.R.3d 1179 (1967).

■ Finally, Dr. Warmouth charges the Board abused its discretion in imposing a sanction far more severe than warranted by the facts. The choice of a penalty by an administrative agency if based on substantial evidence and not outside its statutory authority is a matter of discretion to be exercised solely by the agency. *See Kostika v. Cuomo,* 41 N.Y.2d 673, 394 N.Y.S.2d 862, 363 N.E.2d 568 (1977); *Beall Construction Company v. Occupational Safety and Health Review Commission,* 8th Cir., 507 F.2d 1041, 1046 (1974); 73 C.J.S. *Public Administrative Law and Procedure,* § 68 (1983). In reviewing for an abuse of discretion, this Court accepts the test in *In Re Polk License Revocation,* 90

N.J. 550, 449 A.2d 7 (1982), as suggested by Dr. Warmouth. Under this test, the question is not whether this Court would have imposed a five-year revocation, but whether such punishment is so disproportionate to the offense in light of all the circumstances as to be shocking to one's sense of fairness. It is not. Nor does the Court agree with Dr. Warmouth that the revocation effectively prevents him from ever returning to his chosen profession.

■ Contrary to Dr. Warmouth's argument that he cannot be punished in addition to the criminal conviction, disciplinary boards can impose sanctions as a form of punishment, though not in the penal sense, for the same acts for which one is convicted. Indeed, the very conviction of a crime is a ground for disciplinary action. 24 *Del. C.* § 2113(a)(1).

Accordingly the decision of the Board is affirmed.

IT IS SO ORDERED.