JAMES B. HOMAN and ELIZABETH C. HOMAN, Appellants, v. CLARENCE K. LYNCH, LAWRENCE I. TURNER and EVERETT F. WARRINGTON, constituting the Board of Adjustment of the Mayor and City Council of the City of Rehoboth Beach, and FRANK S. PARKER and N. MAXSON TERRY, Appellees.

(*January* 6, 1959.)

SOUTHERLAND, Chief Justice, BRAMHALL, Justice, and STIF-TEL, Judge, sitting.

*Claude L. Tease* for appellants.

*Jackson W. Raysor* (of Tunnell and Raysor) for appellees.

Supreme Court of the State of Delaware, No. 32, 1958.

SOUTHERLAND, C. J.:

This appeal presents a single question:

"Was there sufficient evidence before the Board of Adjustment to justify the granting of a variance from the rear set-back requirement of the city zoning ordinance?"

The facts are these:

The City of Rehoboth Beach in Sussex County is situated on the Atlantic Ocean and is the principal seashore resort in the State.

The boardwalk runs north and south. Leading to the boardwalk are numerous streets running east and west. One of these, Olive Avenue, runs easterly from First Street to a dead end at the boardwalk. The property involved in this case consists of two lots on the south side of Olive Avenue adjoining the boardwalk. They are numbered 2 and 4, and each is of 50 feet in frontage and 100 feet in depth. The easterly boundary line of lot 2 is the rear or westerly boundary line of two lots fronting on the boardwalk. On one of these boardwalk lots is a taproom and night club known as "The Pink Pony". The other boardwalk lot is vacant and has been on occasion used to display and advertise automobiles at night under powerful lights.

On Olive Avenue the immediate neighborhood may be described as partly commercial and partly residential. Lot No. 6, adjoining on the west, is used for apartments, and lot No. 8, the second lot to the west, for a boarding house and public dining room.

Opposite, on the north side of Olive Avenue, are an apartment house and two rooming houses.

Immediately adjoining lots 2 and 4 on the rear is the property of Mr. and Mrs. James B. Homan, fronting on Maryland Avenue. In addition to a house, there are on the Homan lot, at the rear of the property and two feet from its common boundary with lot 2, two dwellings, rented for apartments, containing five bedrooms and four baths.

Under the Rehoboth zoning ordinance the district in which these properties are situated is zoned as an R-2 residence district. The ordinance provides:

"Sec. 500. Buildings may be erected, altered or used and a lot or premises may be used for any of the following purposes, but no other:

"(a) A use permitted in R-1 Residence Districts.

"(b) Single family semi-detached dwelling.

"(c) Two-family or three-family detached dwellings.

"(d) Two-family semi-detached dwelling.

"(e) Multiple dwelling and apartment house, where no sign or advertisement is shown other than a sign not larger than two hundred sixteen (216) square inches bearing only the name of the apartment house and the words 'Apartments' or 'Apartment House'.

"(f) Single-family attached dwelling.

"(g) Boarding and Rooming House, where no sign or advertisement is shown other than a sign not larger than two hun-

dred sixteen (216) square inches bearing only the name of the house and/or words necessary to indicate whether a rooming or a boarding house or both.

"(h) When authorized as a special exception: cabins, individual or multiple attached.

"(i) Club or country club, except where one of the principal activities is one which is customarily carried out as a business.

"(j) Golf course, park and recreation center, excluding always those operated for profit and trailer parks.

"(k) When authorized as a special exception: hospital or sanitarium.

"(l) When authorized as a special exception: fraternity house or lodge, except where one of the principal activities is one which is customarily carried out as a business.

\* \* \* \* \*

"Sec. 508. There shall be a rear yard, the depth of which shall be at least twenty-five (25) feet; Provided, that in the case of a lot held in single and separate ownership at the effective date of this Ordinance of a depth of less than one hundred (100) feet, the depth of the rear yard may be decreased by three (3) inches for each foot that the depth of the lot is short of one hundred (100) feet."

The ordinance authorizes the Board of Adjustment to hear and decide applications for special exceptions. The provision for variances is as follows:

"Sec. 904. The Board of Adjustment shall have the following powers:

\* \* \* \* \* \*

"(c) To authorize upon appeal, in specific cases, such variance from the terms of the Ordinance as will not be contrary to the public interest, where owing to special conditions, a literal enforcement of the provisions of the Ordinance will result in

unnecessary hardship, and so that the spirit of this Ordinance shall be observed and substantial justice done."

At the time these proceedings were begun lots 2 and 4 were owned by Mr. N. Maxson Terry. On lot 4 is erected a dwelling house, apparently an old one. Terry contracted, conditionally, to sell them to the respondent Parker, who planned to build a motel on the lots. In March, 1957, application was made to the Building Inspector for a permit to erect the motel. Since the application involved the granting of a special exception for the motel and of a variance in the twenty-five foot set-back requirement, the permit was refused and the matter went to the Board of Adjustment.

Hearings were held and testimony was taken. No objection was made to the granting of the special exception. The variance requested was a change from twenty-five to four feet in the rear set-back. We note that the twenty-five foot set-back provision is subject to subsequent provision that accessory buildings, such as garage apartments, may be built within four feet of the rear line.

Mr. and Mrs. Homan appeared at the hearing and objected to the granting of the variance. The other owners of property nearby who appeared favored it.

The Board made findings of fact and stated its conclusions of law. The Board found unnecessary hardship because of the particular location of the lots and other circumstances, and found that the proposed structure was in keeping with the purpose of the zoning ordinance.

The objectors appealed to the Superior Court, contending that as a matter of law there was no evidence justifying the finding of unnecessary hardship required for the granting of the variance. The Superior Court held the evidence sufficient. The objectors appeal, and renew the contention made below.

We have examined the testimony taken before the Board of Adjustment. In our opinion it was sufficient to justify the Board

in finding the following facts and drawing the following inferences:

(1) Immediate proximity of the lots to a taproom and night club makes the property unsuitable for residential purposes.

(2) Because of such proximity the location of the lots is peculiar to them.

(3) The property had been offered for sale for four years and the owner had been unable to find a purchaser.

(4) The property could not be feasibly or economically used for a motel unless the twenty-five foot set-back were waived, because of the necessity to provide adequate parking space.

(5) The waiver of the twenty-five foot set-back would not change the general character of the neighborhood, but on the contrary would conform to that character.

These facts, in our opinion, justified the Board in its final conclusion that insistence on the twenty-five foot set-back would inflict unnecessary hardship upon the owner, that is, a serious interference with the right of private property, not required to secure reasonable zoning. *Scaduto v. Town of Bloomfield*, 127 *N. J. L.* 1, 20 *A.* 2d 649.

An all-embracing list of circumstances justifying a finding of "unnecessary hardship" in zoning law is seldom attempted. But the basic prerequisites to such a finding are well-settled. It must appear "(1) that the property cannot yield a reasonable return when used for a permitted purpose; (2) that the plight of the owner is due to unique circumstances; and (3) that the use authorized will not alter the essential character of the locality." *Rochester Transit Corporation v. Crowley*, 205 *Misc.* 933, 131 *N. Y. S.* 2d 493, 495.

In *McQuillen on Municipal Corporations*, Vol. 8, pp. 392, 393, it is said:

"* * * No one factor determines the question of what is practical difficulty or unnecessary hardship, but all relevant factors, when taken together, must indicate that the plight of the

premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitation imposed upon them by reason of their classification in a specified zone; when this appears, the further question has to be determined, whether desirable relief may be granted without substantially derogating from the intent and purpose of the zoning law."

■ (1) Economic hardship *alone*, that is, the fact that the owner could use the property more profitably if the variance were granted, is not enough in itself to justify a variance, particularly if the owner had bought the property with full knowledge of the zoning restrictions. *Searles v. Darling*, 7 *Terry* (46 *Del.*) 263, 83 *A.* 2d 96. But it is one factor proper to be considered. *McMahon v. Board of Zoning Appeals*, 140 *Conn.* 433, 101 *A.* 2d 284, 288.

The objectors insist that the instant case is ruled by the *Searles* case, but we do not think so. In that case economic hardship was the *only* circumstance shown. There was no showing that the property could not reasonably be put to a permitted use, nor any showing that there was any hardship peculiar to the applicant's property. Both these circumstances are present here.

■ It must be remembered that the use to which the property will be put is now a permitted use, since the special exception was granted, and that there is no objection to the motel as such. The only objection is to the location of the motel building. It is said that the motel could be set back twenty-five feet from the rear line. According to the testimony, this would not only be an unwise investment, but would unduly cramp the parking space. It is common knowledge that a motel must provide adequate parking space for its customers. The suggestion that the rear twenty-five foot strip could be used for parking is rebutted by the testimony.

■ It seems evident that the owner had been unable to sell the property for residential purposes, and could not sell it

for a motel unless the twenty-five foot set-back were waived. These are factors that the Board could properly consider.

(2) There was testimony that the location of the property was peculiar to it. Objectors seem to argue that a finding of unique circumstances must be bottomed on circumstances of the shape or topography of the land. Not so; a location peculiar to the property may furnish the required unique situation. *Plumb v. Board of Zoning Appeals*, 141 *Conn.* 595, 108 *A.* 2d 899. That case involved a location in a Residence B zone next to railroad tracks, in a district already devoted to commercial use. The court found this to be a unique circumstance and upheld the grant of a variance.

(3) The erection of the motel will not alter the essential character of the locality. First, it is already commercialized to some extent, and second, the ordinance itself permits garage apartments at a point four feet from the rear line. Thus, two small apartment buildings are so erected on the Homan property. Indeed, the character of the immediate neighborhood suggests that the twenty-five foot set-back is no longer of much value in preserving the character of that neighborhood.

Finally, the application of the set-back provision to a motel (now a permitted use) seems on its face a restriction inappropriate to such use, however appropriate it may be to strictly residential uses. *Cf. Appeal of Elkins Park Improvement Association Zoning Case*, 361 *Pa.* 322, 64 *A.* 2d 783.

We are satisfied that the Board exercised a sound discretion in granting the variance.

The judgment of the Superior Court is affirmed.