In the Matter of the Application of A. A. JULIAN
On the Petition of DUDLEY WALLS and MARGARET WALLS, JAMES W. KERRIGAN and MARY C. KERRIGAN, LOUISE K. BALDWIN, WILLIAM I. TAWES.

*(December* 28, 1960.)

CHRISTIE, J., sitting.

*Michael A. Poppiti* and *Joseph T. Walsh* (of Poppiti, Walsh and Ryan) for respondent, appellee.

*Joseph A. L. Errigo* and *O. Francis Biondi* for petitioners, appellants.

Superior Court for New Castle County, No. 1384, Civil Action, 1959.

Case No. 670-A.

CHRISTIE, J.:

In December, 1958 Angelo A. Julian, the appellee, appeared before the New Castle County Building Inspector, Thomas Zappacosta, with plans for the construction of a motel in a C-2 zone located on the Philadelphia Pike near the Governor Printz Boulevard, north of Wilmington. The plans called for a setback of approximately 29 feet from the Philadelphia Pike. The Building Inspector requested a 40 foot setback in accordance with the setback requirements for a C-2 zone, although Mr. Julian argued that under the Zoning Code (*Article XI, Sec. 1 of the Zoning Code of New Castle County*), he was entitled to set the motel back in line with a house which lay south of the Julian property and which was set back approximately 30 feet from the Philadelphia Pike.

Mr. Julian returned to the office of the Building Inspector several weeks later with a new set of plans calling for a 42 foot setback from the Philadelphia Pike but providing for a rear yard of only about 4 or 5 feet. Mr. Julian pointed out that the proposed rear yard would be in violation of the Zoning Code. The Zoning Code of New Castle County specifies that the minimum depth of a rear yard in a C-2 district shall be 20 feet. Article XII, Sec. 1 (1) (d). Although the Building Inspector is not permitted to grant variances or to issue permits for buildings not conforming with Code requirements, on December 23, 1958 he issued a permit to Mr. Julian for the construction of the motel in accordance with the plans presented.

On October 7, 1959, after receiving a protest from the appellants who live in a residential district behind the motel, the Building Inspector issued a "Stop Order" directing that construction of the motel be stopped due to insufficient rear

yard depth. The record does not show when construction was started or how far it had progressed before the initial protest was filed and there is no evidence to support the contention that appellants failed to make a timely complaint.

Subsequently, on October 22, 1959, Mr. Julian appealed the "Stop Order" decision to the New Castle Board of Adjustment and requested a variance as to the rear yard requirements. Such Board is the only body authorized to grant a variance.

Public notice was given by the Board of Adjustment in accordance with the applicable regulations and a hearing was conducted by the Board on October 28, 1959.

At the hearing the appellee's case consisted of a statement by his attorney and the introduction into evidence by stipulation with counsel for the protestants of certain exhibits. These exhibits consisted of a plot plan showing the layout of the motel, an elevation drawing showing the elevation of the building and a number of photographs showing the rear of the motel and various structures such as garages located on the adjoining property of the appellants. A few of these photographs, although not offered into evidence for this purpose by Julian's counsel, showed the motel to be partially completed. The record also contains photographs taken at the instance of the Board.

The New Castle County Building Inspector, who had issued the building permit in question, was called as a witness by the Board after counsel for the appellee Julian informed the Board that he had nothing further to offer. The Building Inspector's testimony shows that both Julian and the Building Inspector were aware of the fact that the proposed rear yard depth of approximately 4 feet was in violation of the minimum rear yard depth requirements of the Zoning Code. The Building Inspector stated that he had

erred in issuing the permit and had "no business issuing that permit".

Sometime after the public hearing the Board visited the premises in question.

On November 25, 1959, the Board of Adjustment rendered an opinion on the appeal of the appellee Julian from the "Stop Order" issued by the Building Inspector and on the request of the appellee Julian for a variance. In its opinion the Board held that the building was in violation of Article XII, Sec. 1 (1) (d) of the Zoning Code, which requires a 20 foot rear yard in a C-2 district and that there can be no doubt that the building permit should not have been issued. The Board further held that the issuance of a permit by a Building Inspector, when the act of issuance was entirely beyond his authority, created no rights in the person to whom the permit was wrongly issued and that the Board clearly had the power to revoke the permit and force the demolition of the partially completed motel. The Board then posed the question as to whether under these circumstances the Board should exercise its discretion to compel destruction of the building. The Board's decision on this question reads as follows:

"The appealing property owners occupy dwellings constructed some years prior to World War II. Immediately in front of their premises, the Governor Printz Boulevard was constructed in the late 1930's. Immediately to the rear of their properties the Zoning Commission set up a C-2 zone along the Philadelphia Pike. These property owners are now unhappily surrounded by some of the symbols of suburban growth. If the rear yard requirement had been complied with, the net difference would have been approximately 16 feet. Furthermore, it is imaginable that these property owners might have been faced with a C-2 use far more obnoxious than a motel. A restaurant with its kitchen 20 feet from their property lines for instance would have devalued these prop-

erties far more. Accordingly, the Board does not consider the zoning violation to be so serious that destruction of the motel is required.

"On the other hand, however, Julian is not entirely free from blame in the situation. There is reason for supposing that Julian was aware of the rear yard requirements, and that his reliance upon the building inspector's permit was not altogether innocent. The Board cannot tolerate reliance upon an invalid building permit.

"Accordingly, Julian is given the following options:

"(a) He may accept a variance from the Board, which the Board will issue upon the following conditions:

"1. Julian will paint the rear wall of his motel a color to be agreed upon between Julian and the appealing property owners. At the earliest possible moment, he will also cause ivy or some similar plant to be planted at the base of his rear wall, so that his entire rear wall will be covered by vegetation as completely as possible.

"2. Julian will reimburse the appealing property owners for their reasonable counsel fees and expenses. Any dispute as to the reasonableness as to counsel fees and expenses will be resolved by the Board.

"3. Julian will, at his own expense, plant such shrubbery or trees in the rear yard of each abutting property owner, as the property owner may direct. The cost of such shrubbery or trees shall not exceed $150.00 for each property owner.

"(b) Alternatively, Julian may decline to accept the conditions imposed. In that event, the permit will be revoked, and Julian may either remove the violation or pursue his appropriate appellant remedy."

Thereafter, the appellee Julian advised the Board that he would accept the conditional variance granted by the Board. On December 1, 1959, the Board signed an Order

granting the variance subject to the conditions listed in the Board's decision.

The petition for the Writ of *Certiorari* was filed in this Court on December 4, 1959. The arguments of the parties on the record below were heard in the Superior Court on June 24, 1960. No testimony was presented in the Superior Court.

Before the presentation of the arguments to the Court on June 24, 1960, the motel had been completed and placed in operation.

The Board's authority to grant a variance from the requirements of the Zoning Code stems from the provisions of the following statute:

"Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the enactment of the regulations, or by reason of exceptional topographic conditions or other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation adopted under this chapter would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; provided such relief may be granted without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning regulations." 9 *Del. C.* § 2617 (3).

The same language is reiterated without enlargement thereon in the County Zoning Code. Zoning Code of New Castle County, Article XIII, Sec. 4(2).

The appellants argue that the Board failed to make findings of fact required by statute, that the variance was granted on account of considerations not pertinent under the statute and that there is no evidence which would bring the Board's decision within the terms of the statute.

Respondent Julian maintains that the record reveals substantial evidence which brings the Board's decision within the statutory requirements. In particular, respondent maintains that his plight as the owner of a partially completed motel at the time of the hearing constituted an "extraordinary and exceptional situation", within the meaning of the statute.

There is no evidence in the record from which the Board could have concluded that a variance should be granted on account of "exceptional narrowness, shallowness or shape" of the property at the time of the enactment of the Zoning Code. The lot is about 133 feet deep at its narrowest point, so that it could easily accommodate a somewhat smaller motel that conforms with the Zoning Code. The motel in question was built with a courtyard which has rooms on three sides of it.

There is no evidence of such "exceptional topographic conditions" as would justify a variance. The land falls off sharply at the rear and a retaining wall about 10 feet high was used. If the rear yard were 15 feet deeper, as required by the Code, the problem created by the grade would have been less severe. Under such circumstances, it is even possible that the retaining wall, which the appellants find particularly objectionable, could have been modified or eliminated.

If the variance was granted pursuant to the statutory authority, it must have been granted on account of some "other extraordinary and exceptional situation or condition of such piece of property". The only condition revealed by the evidence which might be deemed extraordinary and exceptional was the existence of a partially built motel, which had been built under an invalid building permit.

The written conclusions of the Board make no reference to the three statutory grounds upon which the Board is authorized to grant variances. The Board's conclusions tend to indicate that it was striving to find an equitable solution to

the difficult problem without specific reference to the first part of the pertinent statute which defines and limits the Board's authority. The Board was obviously impressed with the fact that a building complying with the Zoning Code in every respect might have been built in such a way as to be more objectionable from the neighbors' standpoint than the motel. The Board's other findings are relevant and necessary under the statute, since they bear on the issue of "hardship" and the issue of whether a variance might be granted "without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan". Nevertheless, these important factors became pertinent only after a finding of one of the three conditions listed in the first part of the statute.

While formal and complete findings of fact and conclusions of law may not be required in every case, the Board has no authority to grant a variance except as provided by statute. Therefore, the Board's decision should always include a finding that one of the three specific statutory conditions exist which would justify a granting of a variance.

The defect in the decision is much more than a procedural defect. Many reasonable and equitable arguments may exist which might be advanced for granting of a variance, but a variance cannot be granted unless the primary statutory grounds exist. Many of the cases from other jurisdictions are decided under statutes which have much more liberal provisions in respect to variances. Even within Delaware municipalities are subject to a different zoning statute which leaves to the municipal legislative bodies the standards which govern the granting of variances. See 22 *Delaware Code* § 321; *Homan v. Lynch et al.*, 1958, 1 *Storey* 433, 147 *A.* 2d 650, 651. Since there are such wide variations in the statutory provisions, each case must be read in the light of the pertinent statutory provisions.

The facts in the case of *Homan v. Lynch et al., supra,* are parallel to the case at bar in some respects. In that case a motel was built in Rehoboth without the rear yard required in the municipal zoning code and the Supreme Court held that there was evidence which justified the variance which had been granted in advance by the municipal Board of Adjustment. In that case the Supreme Court quoted the applicable municipal zoning ordinance and found that the record contained evidence which supported the Board's decision under the specific provisions of the ordinance.

In the *Homan* case the Board had made specific findings under an ordinance, the terms of which differ from the applicable statute in this case. In that case, the Supreme Court reviewed the Board's action by analyzing the evidence in terms of the ordinance granting the Board the power to permit variances. The same approach was taken in *Searles v. Darling,* 1951, 7 *Terry* 263, 83 *A.* 2d 96; *Auditorium, Inc. v. Board of Adjustment of Mayor & Council of Wilmington,* 1951, 8 *Terry* 373, 91 *A.* 2d 528 and *Application of Emmett S. Hickman Co.,* 1954, 10 *Terry* 13, 108 *A.* 2d 667.

New Jersey is the only jurisdiction called to the Court's attention where the pertinent statute is substantially identical with 9 *Del. Code* § 2617(3). In that jurisdiction a long line of cases have uniformly required that any variance granted by the Board of Adjustment be supported on the record by substantial evidence which relates to the specific provisions of the statute. *Lumund v. Board of Adjustment,* 1950, 4 *N. J.* 577, 73 *A.* 2d 545; *Home Builders Ass'n of Northern New Jersey v. Borough of Paramus,* 1951, 7 *N. J.* 335, 81 *A.* 2d 753; 165 *Augusta Street, Inc. v. Collins,* 1952, 9 *N. J.* 259, 87 *A.* 2d 889.

If the evidence in the record justifies the granting of the variance under the statute, 'this Court should affirm the decision of the Board even though the Board failed to cite the pertinent evidence in its findings. Thus, if the exist-

ence of a partially completed building under all the circumstances here present constitutes such an "extraordinary and exceptional situation or condition" as to legally justify the granting of a variance under the statute, the Board will be affirmed.

The Delaware cases and the New Jersey cases merely point out the obvious and necessary attention that an appellate court must give to the pertinent statute or ordinance on an appeal where a variance is involved.

There is no reported Delaware case where partial completion of a building has been held to be a ground for the granting of a variance. In fact, the appellant has pointed out no case which so holds, although there is dicta in a now repudiated New Jersey case which suggested that a county governing body could not revoke a building permit issued by error after construction had started. *Freeman v. Hague*, 1929, 106 *N. J. L.* 137, 147 *A.* 553.

After the decision in *Freeman v. Hague*, New Jersey adopted the zoning statute upon which much of the Delaware statute appears to be based.

Thereafter, when a similar problem arose under the new statute, the New Jersey Supreme Court stated:

"It is next said by the prosecutors that they acquired vested rights when the building inspector's permit had been issued and acted upon and that it is not within the power of the municipality to limit the rights so acquired; citing *Freeman v. Hague*, 106 *N. J. Law* 137, 147 *A.* 553. That decision bore upon a building permit granted, before the passage of the Zoning Act (chapter 274, P. L. 1928 (Comp. St. Supp. 1930 § *136-4200J (1) *et. seq.*)), by a duly qualified municipal body. In the present case the permit was issued by an officer who assumed, but did not have, the requisite authority. I do not understand it to be the law that a property owner may obtain from an unauthorized official a permit to do a

forbidden act and then, by proceeding quickly with the work, forestall consideration by the lawfully designated tribunal." *Dickinson v. Inhabitants of City of Plainfield, Sup. Ct.* 1935, 13 *N. J. Misc.* 260, 176 *A.* 716, 717, 718, *affirmed Err. & App.* 1936, 116 *N. J. L.* 336, 184 *A.* 195.

See also to the same effect *Home Fuel Oil Co. v. Borough of Glen Rock et al.*, 1937, 118 *N. J. L.* 340, 192 *A.* 516; *Giordano v. Mayor and Council of Borough of Dumont et al.*, 1948, 137 *N. J. L.* 740, 61 *A.* 2d 245, 6 *A. L. R.* 2d 956; *Adler v. Department of Parks, etc.*, 1952, 20 *N. J. Super.* 240, 89 *A.* 2d 704 and the cases collected in 6 *A. L. R.* 2d 960.

The decision in the *Dickinson* case quoted above was of long standing when the Delaware General Assembly adopted a zoning statute for New Castle County, almost identical with the New Jersey Zoning Act. See 48 *Del. Laws*, Ch. 321 (1949) which now appears as 9 *Delaware Code*, Ch. 26 and compare 40 *N. J. S. A.* 55-50 (pocket part).

The general rule is that an appellate body may revoke an invalid permit, even though it was issued in good faith and even after the holder of the permit has gone to expense by starting a building in reliance thereon.

However, the power of the Board to revoke the invalid license is not seriously challenged here. The Board recognized its power to take drastic steps but it elected not to do so. Here the Court must decide whether the Board erred in validating the otherwise invalid building permit by granting a variance when the only statutory ground for granting such variance must depend upon a finding that the existence of the partially completed building itself is such an extraordinary and exceptional condition as to justify the granting of such variance.

I am of the opinion that the Board made an error in the interpretation of the statute when it ruled that the

circumstances here present gave it jurisdiction to grant a variance.

If a builder, acting under a permit which is invalid, proceeds to construct a building which he knows to be in violation of the Zoning Code, he should not be allowed to use such building as the basis for an application for a variance from the requirements of the Zoning Code where such variance would not otherwise have been permissible.

■ The term "extraordinary and exceptional situation or condition of such piece of property" as used in the statute obviously refers to an economic, geographic or topographic situation or condition, connected with or affecting the lot for which the variance is sought, which was not created by the variance itself. If the existence of a new building being the subject of a variance not authorized by the Board is grounds for authorizing that very variance, the work of the Board and indeed the Zoning Code itself means little or nothing.

I find that the variance granted by the Board was not made pursuant to the statutory authority granted to the Board. I further find that there is no evidence in the record upon which the Board might have properly granted a variance pursuant to the applicable statute. Therefore, the decision of the Board must be reversed.

The attorneys will confer with the Court as to a proper implementation of the decision.