**Robert H. RICHARDS, Jr., et al.,
Petitioners,**

v.

**William G. TURNER, Jr., et al.,
Respondents.**

Superior Court of Delaware,
New Castle.

March 31, 1975.

S. Bernard Ableman, James S. Green, Connolly, Bove & Lodge, Alan W. Behringer, Richards, Layton & Finger, Wilmington, for petitioners.

° Stanley T. Czajkowski, Czajkowski & Maguire, Wilmington, for respondents.

## OPINION

O'HARA, Judge.

Unit, Inc. ("Unit") and Patterson-Schwartz & Associates, Inc. ("Patterson-Schwartz") propose building twin tower apartments on Pennsylvania Avenue and, as an accessory to the towers, a two-level parking facility. There is no zoning impediment to constructing the apartment buildings. The problem arises because most of the land proposed for use as the parking facility is within a district zoned as residential.

Approximately five years ago Unit and Patterson-Schwartz purchased properties known as 1114 North Rodney Street and 1107 and 1109 North Broom Street, Wilmington, Delaware. The towers are to be constructed on land at 1114 North Rodney Street and 1109 North Broom Street which borders Pennsylvania Avenue. The parking lot is to be built on land behind the towers at 1107 North Broom Street and at 1110 and 1112 North Rodney Street.

Unit and Patterson-Schwartz applied to the Board of Adjustment of the City of Wilmington ("Board") for a variance to the zoning ordinance in order to build the parking facility as a non-conforming use. The Board conducted a public hearing on May 29, 1974, and entered an order granting the application.

After entry of the Board's order, some of the residents of the 1100 blocks of North Broom and North Rodney Streets, petitioned this Court for a writ of certiorari. The petitioners joined as respondents the applicants, Unit and Patterson-Schwartz, and the three members of the Board.

■ In a certiorari proceeding to review an order of the Board granting a variance, the Court measures the sufficiency of the record by the standard established by the enabling act. If the record shows substantial evidence upon which the Board could properly have based its decision, while correctly applying the law to the facts, the Court will sustain the decision. In the absence of substantial evidence to meet the statutory criteria, granting a variance would be an abuse of discretion and an error of law and the Court would not sustain the order. Searles v. Darling, Del.Super., 7 Terry 263, 83 A.2d 96 (1951).

The provisions of law regulating and restricting the use of buildings and premises in the City of Wilmington are found in 2 Wilmington Code § 48. Section 48–63 of this ordinance empowers the Board to grant a variance upon a proper showing that the necessary prerequisites exist, as follows:

"The zoning board of adjustment may after a public hearing, following public notice and notification to property owners affected, grant a variance from the requirements of this chapter, where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of adoption of the ordinance from which this chapter derives or by reason of exceptional topographic conditions or under extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation would make it impractical for the owner to use such piece of property for a proposed principal building and buildings accessory thereto in conformance with those requirements of this chapter and thus would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the owner of such property; provided, that such variance may be granted without substantial detriment to the public good and without

substantially impairing the intent and purposes of this chapter."

Thus, the above ordinance establishes the following standards for granting a variance:

1. The particular piece of property for which the variance is sought must have an exceptional topographic condition or an exceptional and extraordinary situation or condition.

2. Strict application of the ordinance would make the use of the piece of property for a conforming use impractical and impose peculiar practical difficulties or undue hardship on the owner.

3. There would be no substantial detriment to the public good and no substantial impairment of the intent and purpose of the ordinance.

In its decision dated May 29, 1974, the Board found all of the above conditions with respect to 1107 and part of 1109 North Broom Street and 1110 and 1112 North Rodney Street and granted a variance from the zoning ordinance to permit construction of the two-level parking facility.

Two of the properties for which a variance was sought, 1110 and 1112 North Rodney Street, are not owned in fee by the applicants. According to testimony before the Board, the applicants had a contractual relationship with the owners of these properties and that by virtue of these contracts of purchase, they were equitable owners of the properties. When one of the petitioners sought to cross-examine a witness about the contract with the owner of the property at 1110 North Rodney Street, the Board Chairman refused to admit the evidence on the ground that it was irrelevant. The nature of the ownership of the property at 1110 North Rodney Street was not clarified nor was that of the property at 1112 North Rodney Street. The petitioners contend that the applicants' interest in 1110 North Rodney Street was an option

to purchase, contingent on the granting of the variance, and acquired at no cost and has now expired. The petitioners further contend that there was no contractual relationship with the owners of 1112 North Rodney Street, only negotiations for a sale between the applicants and the owner.

In Homan v. Lynch, Del.Supr., 1 Storey 433, 147 A.2d 650 (1959), the Court upheld the Board's order granting a variance on the rear setback requirement of twenty-five feet to four feet to accommodate the construction of a motel and to provide more parking space for customers. The property involved consisted of two lots adjoining the boardwalk in Rehoboth Beach. A special exception had been granted to permit construction of the motel and there were no objections to the motel as such. The Court there found that the testimony before the Board was sufficient to justify the following findings:

1. Immediate proximity of the lots to a taproom and night club made the property unsuitable for residential purposes.

2. Because of such proximity the location of the lots was peculiar to them.

3. The property had been offered for sale for four years and the owner had been unable to find a purchaser.

4. The property could not be feasibly or economically used for a motel unless the twenty-five foot setback was waived, because of the necessity to provide adequate parking space.

5. The waiver of the twenty-five foot setback would not change the general character of the neighborhood.

The *Homan* Court held these findings constituted substantial support for the Board's conclusion that insistence on the twenty-five foot setback would inflict unnecessary hardship upon the owner and would seriously interfere with the right of private property not required to secure reasonable zoning.

The petitioners rely primarily on Searles v. Darling, supra, as authority for their position that the Board's decision granting a variance should be reversed. In *Searles,* the applicant had proposed to build an apartment house and, nearby as an incident to the apartment house, an eight-story garage. The lot for the proposed garage was within a territory zoned as residential many years prior to the applicant's purchase. The lot was occupied by many small single-story garages and had always been devoted to a non-conforming use. The Court in *Searles* failed to find unnecessary hardship which it emphasized is the sine qua non upon which a variance rests.

■ One of the factors the Court considers in determining the existence of undue hardship is the timing of the acquisition of the properties for which the variance is sought. Where a person buys property after the zoning restrictions are placed upon it, the hardship is self-imposed and is generally not sufficient to sustain a variance. There is nothing in the record of this case which would indicate that the hardship developed subsequent to the applicants' purchase of the properties.

■ Although an economic disadvantage does not constitute such an unnecessary hardship peculiar to the property involved that will in itself justify the issuance of a variance, it is another criterion the Court considers. Homan v. Lynch, supra. The record before the Court contains extensive testimony on the economic feasibility of rebuilding single-family dwellings on the subject properties. Essentially it shows that the estimated cost of new single-family dwellings was higher than the quoted values of neighboring residences but that it was not so disproportionate as to make residential use of the land prohibitive. The fact that the applicants can obtain a better return on their investment by a non-conforming use will not suffice as grounds for a variance. Plumb v. Board of Zoning Appeals, Conn.Supr.Ct. of Errors, 141 Conn. 595, 108 A.2d 899 (1954).

Economic necessity must be shown by evidence that is substantial, serious and compelling.

■ Another economic consideration is the extent to which property values are diminished by the provisions of a zoning ordinance. Imposing a zoning restriction may reduce the value of property along the boundary on the more restricted side. Such a reduction in value would tend to occur at the time the zoning restriction is imposed and to be reflected in the purchase price when the property is sold. A reduction in value shared by other owners of land along the boundary and arising from the impact of the ordinance on the entire district is not enough to qualify properties for a variance. One claiming to be injured must prove that the ordinance peculiarly injured his property. There was no claim that the application of the ordinance was discriminatory as to the subject properties and was not common to all other property abutting the boundary.

■ A variance may be granted where property is subject to conditions unique or peculiar to itself as distinguished from that arising from the impact of the zoning regulations on the entire district. The applicants' position is that the location of the properties immediately contiguous to an R–5–B zoned area is a unique circumstance justifying a waiver of the zoning ordinance. A hardship of such a nature as to warrant a grant of relief from the lawful restrictions affecting properties in the district must be different in kind from that imposed on properties in general by the ordinance. Plumb v. Board of Zoning Appeals, supra. Such a difference was found in the case of Homan v. Lynch, supra, where immediate proximity of the lots to a taproom and night club made the property unsuitable for residential use and this location was peculiar to the specific property for which the variance was sought. The applicants contend that the type of neighborhood in which the R–1 properties are located is also unique and cite several non-residential uses. In Homan v. Lynch, supra, the Court held that the waiver of the zoning restrictions would not change the essential character of the district. In the present case the record shows that the nearby non-residential uses were not variances from the zoning ordinance but were a use by right in a rezoned district.

■ The hardship must be inherent in the particular property for which the variance is sought. In Searles v. Darling, supra, under similar factual circumstances, the Court determined that the hardship asserted was suffered by the apartment house property which lacked adequate parking space and not by the property on which the garage was contemplated. This determination is applicable to the case at bar.

[10–12] An unnecessary hardship that will justify the grant of a variance may be established by showing that the physical characteristics of the property are such that the property may not be used in a reasonable manner within the restrictive provisions of the zoning ordinance. The testimony showed that there were no physical conditions that make it impractical to use the Broom Street properties for single-family dwellings but that there was inadequate frontage on Rodney Street. The Board found an exceptional topographic condition existing with respect to the properties. If the applicants' interest in the North Rodney Street properties was by option, they could avoid the adverse topographic condition, as well as any other hardship related to these properties, by declining to exercise the option. It follows that the Board was in error in refusing to permit evidence to be presented on this point.

The Court concludes that the Board committed abuse of discretion and error of law in granting the variance requested. The order of the Board of Adjustment must be reversed.

It is so ordered.