**BOARD OF ADJUSTMENT OF NEW CASTLE COUNTY et al., Respondents below, Appellants,**

v.

**HENDERSON UNION ASSOCIATION et al., Petitioners below, Appellees.**

Supreme Court of Delaware.

Submitted April 15, 1977.

Decided May 20, 1977.

Joseph J. Farnan, Jr., and Thomas F. Luce, Wilmington, for Board of Adjustment of New Castle County.

Howard M. Handelman and Jeffrey M. Weiner, Bayard, Brill & Handelman, P. A., Wilmington, for Henderson Union Ass'n, et al.

John A. Faraone and Harvey B. Rubenstein, Wilmington, for Tri-Dale, Inc.

Joseph M. Bernstein, Wilmington, for Henry R. Folsom, Jr., et al., Members of New Castle County Council.

Before DUFFY and McNEILLY, JJ., and MARVEL, Chancellor.

PER CURIAM:

This is an appeal from a decision of the Superior Court reversing an order of the New Castle County Board of Adjustment granting a variance. We affirm.

I

Tri-Dale, Inc. (respondent) proposes to develop a 180-acre parcel of land in New Castle County with single family dwellings. The land is zoned R–2, which requires a minimum lot size of one-half acre (21,780 square feet). Respondent applied to the Board of Adjustment for a variance authorizing it to cluster the dwellings on lots ranging in area from 14,000 to 21,600 square feet; it proposes to dedicate 34 acres (19% of the total land area) to open space.[1] Based on a finding that "the proposed site plan compliments the conditions inherent in the land . . .," the Board granted the variance.

On appeal by Henderson Union Association, an organization of objecting property owners, the Superior Court concluded that the standards defined by this Court in Homan v. Lynch, Del.Supr., 1 Storey 433, 147 A.2d 650 (1959), had not been met and, accordingly, reversed the Board's decision. Respondent then filed this appeal.

II

■ The Board's authority to grant a variance is derived entirely from its juris- dictional statute. Application of Julian, Del.Super., 3 Storey 175, 167 A.2d 21, 25 (1960); 9 Del.C. § 1352(a)(3). Therein the Board is "empowered to hear and decide" a variance petition when "a literal interpretation of the provisions of any zoning ordinance, code or regulation will result in *unnecessary hardship or exceptional practical difficulties to the owner of property . . . .*"[2] (Emphasis added.) Minimally, a finding of one or both of the statutory standards must be made before the Board can grant a variance. Neither standard, however, is defined in the statute, but in Homan this Court examined and explained, in a comparable context, the "unnecessary hardship" test.

■ Homan involved a zoning ordinance of the City of Rehoboth Beach which authorized its Board to grant a variance upon a showing that "a literal enforcement of the provisions of the Ordinance will result in unnecessary hardship, . . . ." Homan, supra at 653. The Court affirmed the grant of a variance and defined the basic prerequisites of a finding of "unnecessary hardship" in zoning law; namely:

"(1) that the property cannot yield a reasonable return when used for a permitted purpose; (2) that the plight of the owner is due to unique circumstances; and (3) that the use authorized will not alter the essential character of the locality."

Id. at 654, quoting Rochester Transit Corporation v. Crowley, 205 Misc. 933, 131 N.Y. S.2d 493, 495. Additionally, the Court explained, a finding that a landowner could use the property more profitably if a variance were granted, standing alone, is not enough to justify the grant thereof. Id.; 3 Anderson, American Law of Zoning, § 18.51 (2d ed. 1977).

Respondent does not rely on Homan, nor does it contend that denial of the variance

1. The plan calls for development of 312 lots of which 264 will be less than minimum lot size; 220 lots (83%) will each have an area of less than 18,000 square feet.

2. See § 1352(b) which authorizes the Board, "[i]n the exercise of its powers," to reverse, affirm or modify the order or determination on appeal to it.

will cause unnecessary hardship. Here, Tri-Dale argues, rather, that the variance is warranted under the "exceptional practical difficulties" standard and suggests that, that criterion is less exacting than the hardship requirement, particularly because the variance it seeks concerns land "area," not land "use."

Assuming without deciding that there is a permissible distinction under the governing statute between "area" and "use" criteria when a variance is sought,[3] we conclude that the difference is of no help to respondent here. The Board's determination is, in any event, inadequate as a matter of law.

We say this because that part of § 1352(a)(3) on which respondent relies, requires the Board to ground its decision on a finding of "exceptional practical difficulties to the owner of property," before it grants a variance. The record does not show that any such finding was made. The Board's decision is premised entirely on the conclusion that "the proposed site plan compliments the conditions inherent in the land, . . . ." Indeed, that kind of legislative finding may support a rezoning of the land, but that is not the Board's function. The Board is duty-bound to address the "difficulties" presented by the owner and determine whether they are "practical" as distinguished from theoretical, "exceptional" rather than routine,[4] because these statutory standards supply both a foundation for the Board's power and a yardstick against which its discretion may be measured. In this opinion we make no attempt to define the magnitude of that power nor to limit the multiple ways in which it may be exercised. We simply note that the Board failed to discuss or even identify the factors which are essential to invocation of its power. In short, the Board based its decision upon a power it does not have, and that is fatal to respondent's cause.

It follows, therefore, that the order of the Board is without basis in law and the decision of the Superior Court reversing the grant of a variance was correct.[5]

Affirmed.

---

3. See, for example, the discussion in *American Law of Zoning, supra,* 18.46–.49.

4. During the hearing Robert F. Bradley, a civil engineer, testified for respondent as to the topography of the property, its present use and as to certain problems which limited development. After review of the summary of Mr. Bradley's testimony in respondent's brief, compare *Supreme Court Rule* 9(2)(g), we are unable to conclude that it provides a foundation in fact for the Board's decision.

5. We doubt that changes of the magnitude sought by respondent in this case can realistically be the subject of a variance. See *American Law of Zoning, supra,* § 18.72, and cases cited therein. We are unaware of any law or regulation which renders lots of a certain area or contour categorically unqualified for a variance, but this deviation from the zoning plan is so extensive that it may well amount to a legislative amendment to, rather than an administrative variation from, the plan; thus it may impair the intent and purpose of the zoning ordinance in violation of 9 *Del.C.* § 1352(a)(3).