# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

NIHAR BHAVESH GALA, M.D., :

        : C. A. No.: S19A-05-002 CAK

  Appellant,     :

         :

  v.       :

DELAWARE BOARD OF MEDICAL :
LICENSURE AND DISCIPLINE,  :

  Appellee.     :


NIHAR BHAVESH GALA, M.D., :

        : C. A. No.: S19A-06-002 ESB

  Appellant,     :

         :

  v.       :

JEFFREY W. BULLOCK, in his official :
capacity as SECRETARY OF STATE, :

  Appellee.     :


Submitted: April 14, 2020
Decided: May 1, 2020


On Appeal from final Orders of the Delaware Board of Medical Licensure and
Discipline and the Delaware Secretary of State issued on June 4, 2019 and June 18,
2019, Respectively

## AFFIRMED

# MEMORANDUM OPINION AND ORDER

Benjamin A. Schwartz, Esquire, and Gwendolyn Osborn-Gustavson, Esquire, Schwartz & Schwartz, Attorneys at Law, P.A., 1140 South State Street, Dover DE 19901, Attorneys for Appellant

Patricia A. Davis, Esquire, Delaware Deputy State Solicitor, 102 West Water Street, Dover, DE 19904, Attorney for Appellee

**KARSNITZ, J.**

## PROCEDURAL BACKGROUND

Appellees are the Delaware Board of Medical Licensure and Discipline (the "Board") and Jeffrey W. Bullock, in his official capacity as the Delaware Secretary of State (the "Secretary"). The Delaware General Assembly has charged the Board with regulating the practice of medicine in Delaware in order to protect the public. The Board was created as "the State's supervisory, regulatory, and disciplinary body for the practice of medicine."[1] The Board's statute requires that it discipline licensed medical doctors for unprofessional conduct.

The Delaware General Assembly has charged the Secretary with regulating the registration and control of the manufacture, distribution and dispensing of controlled substances within Delaware.[2] In order to lawfully write prescriptions for controlled substances, Delaware physicians must obtain a controlled substance

---

[1] 24 *Del. C.* §1710(a).
[2] 16 *Del. C.* §4731.

1

registration ("CSR") from the Secretary.[3] The Secretary, after due notice and a hearing, may limit, suspend, fine or revoke the registration of any prescriber who has violated certain statutory requirements.

In October of 2018, the Delaware Department of Justice ("DOJ") filed disciplinary complaints against Appellant, Dr. Nihar Bhavesh Gala ("Dr. Gala"), a Board-licensed Delaware physician and controlled substances registrant[4] since 2015, with the Board, the Secretary and the Secretary's designee, the State of Delaware Controlled Substances Advisory Committee (the "Committee").[5] The DOJ complaint filed with the Board alleged that Dr. Gala violated six Delaware medical profession statutes[6] and numerous Board regulations.[7] The DOJ complaint filed with the Committee and the Secretary alleged that Dr. Gala had violated four controlled substances statutes.[8] To summarize, the State alleged that Dr. Gala

---

[3] 16 *Del. C.* § 4733.
[4] CSR No. DR-0010935.
[5] A-1. References to the Appendix to Appellant's Opening Brief on Appeal will be by bates stamp number beginning with the prefix "A-."
[6] The use of any fraudulent, deceitful, dishonest, or unethical practice in connection with the practice of medicine under 24 *Del. C.* § 1731(b)(1); conduct that would constitute a crime substantially related to the practice of medicine under 24 *Del. C.* §1731(b)(2); unethical or other conduct likely to deceive, defraud or harm the public under 24 *Del. C.* § 1731(b)(3); the use, distribution or issue of prescriptions for a dangerous or narcotic drug for other than a therapeutic or diagnostic purpose under 24 *Del. C.* §1731(b)(6); any pattern of negligence in the practice of medicine under 24 *Del. C.* §1731(b)(11); and, a violation of Board regulations which more probably than not will harm or injure the public or an individual under 24 *Del. C.* §1731(b)(17).
[7] Bd. Reg. 8.0 *et seq.*; Bd. Reg. 18.0 *et seq.*
[8] Failure to maintain effective controls against diversion of controlled substances into other than legitimate medical, scientific or industrial channels under 16 *Del. C.* § 4735(b)(1); failure to comply with applicable federal, state or local law under 16 *Del. C.* §4735(b)(2); violation

2

prescribed controlled substances to a patient without proper evaluation, monitoring or documentation in connection with the care of that patient, and that he prescribed controlled substances for that patient in exchange for an inappropriate sexual relationship with the patient.

Since the complaints arose from a common nucleus of operative fact, they were consolidated for purposes of an administrative hearing by the Division of Professional Regulation (the "Division") under the Delaware Administrative Procedure Act ("APA").[9] After a pre-hearing conference on March 5, 2019, the administrative hearing on the complaints was held on March 11-15, 2019, and the hearing officer (the "Hearing Officer") issued separate written recommendations to the Board and to the Committee and the Secretary on April 12, 2019 and April 18, 2019, respectively.[10] Dr. Gala filed exceptions to the recommendations of the Hearing Officer with the Board and with the Committee and the Secretary on May 1, 2019 and May 6, 2019, respectively.[11]

The Board deliberated on the Hearing Officer's recommendations and Dr. Gala's exceptions on May 7, 2019 and issued its final order permanently revoking

---

of a rule of the Secretary related to controlled substances under 16 *Del C.* § 4735(b)(6); and, engaging in any conduct the Secretary finds to be inconsistent with the public interest under 16 *Del. C.* § 4735(b)(8).
[9] A-3.
[10] A-1 to A-131; A-132 to A-256.
[11] A-257; A276.

3

Dr. Gala's medical license on June 4, 2019.[12] The Committee deliberated on the Hearing Officer's recommendations and Dr. Gala's exceptions on May 22, 2019 and issued a recommendation to the Secretary that Dr. Gala's CSR be revoked.[13] On June 18, 2019, the Secretary revoked Dr. Gala's CSR.[14]

On May 28, 2019 and June 24, 2019, respectively, Dr. Gala filed two appeals with this Court from the final order of the Board and the Secretary's revocation of his CSR (collectively, the "Orders"). On July 24, 2019, I consolidated the two appeals for purposes of briefing and argument. Appellant filed his Opening Brief challenging the Orders on October 31, 2019. Appellees filed their Answering Brief on December 2, 2019. Appellant filed his Reply Brief on December 15, 2019. I heard oral argument from the parties on April 14, 2020. For the reasons set forth below, the Orders are **AFFIRMED**

## JURISDICTION AND STANDARD OF REVIEW

Following the enactment of HB 459 by the 145th General Assembly in 2010, a new administrative hearing process was created whereby a Division hearing officer could conduct physicians' disciplinary hearings.[15] Pursuant to the newly enacted statute, hearing officers are empowered to:

> ... conduct hearings, including any evidentiary hearings. The testimony
> or evidence so taken or received shall have the same force and effect as

---

[12] A-280 to A-287.
[13] A-288.
[14] A-288 to A-292.
[15] 29 *Del. C.* § 8735(v)(1)a; 77 *Del. Laws*, c. 325, §§ 23-26 (2010).

4

if taken or received by the board or commission. Upon completion of such hearing or the taking of such testimony and evidence, the hearing officer shall submit to the board or commission findings and *recommendations* thereon. ***The findings of fact made by a hearing officer on a complaint are binding upon the board or commission. The board or commission may not consider additional evidence.*** When the proposed order is submitted to the board or commission, a copy shall be delivered to each of the other parties, who shall have 20 days to submit written exceptions, comments and arguments concerning the conclusions of law and recommended penalty. The board or commission shall make its ***final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions*** based upon the written record. [Emphasis supplied.][16]

Three years later, the Secretary's enabling statute regarding his regulation of controlled substance registrants was also amended, making clear that investigations would be conducted by the Division pursuant to the same statute, and that hearings involving the discipline of controlled substance registrants would be conducted pursuant to the APA.[17]

It is clear from the enabling legislation that both the Board and the Secretary were bound by the Hearing Officer's findings of fact and could not receive additional evidence. However, they could – and in fact did – reject modify or affirm the Hearing Officer's conclusions of law and recommended sanctions.

I have jurisdiction to entertain an appeal from final administrative orders of the Board and the Secretary under the Delaware Administrative Procedures Act

---

[16] 29 *Del. C.* § 8735(v)(1)d.
[17] 16 *Del. C.* §§ 4735(a) & 4736(a); 79 *Del. Laws*, c. 164, § 1 (2013).

5

("APA").[18] On appeal from their Orders, I must determine whether the decision is supported by "substantial evidence" and the agency "made no errors of law."[19] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20] I must review the record in a manner "most favorable to the prevailing party below;"[21] i.e., the Board and the Secretary. I have neither weighed the evidence myself nor made my own factual findings; rather, I have carefully reviewed the record to determine whether the evidence therein is adequate to support the Board's and the Secretary's factual findings.[22]

I have also carefully reviewed the record to determine whether the Board and the Secretary could have "fairly and reasonably" reached their conclusions.[23] "It is a low standard to affirm and a high standard to overturn."[24] "If the Board's findings and conclusions are found to be based upon substantial evidence and there is no error of law, the Board's decision must be affirmed."[25]

---

[18] 16 *Del. C.* § 4736(b); 29 *Del. C.* §§ 10102(4) & 10142(a).

[19] 29 *Del. C.* § 10142(d); *Sekyi v. Del. Bd. of Pharmacy*, 2018 WL 4177544, at *3 (Del. Super. Aug. 29, 2018); *Tri-State Liquor Mart, Ltd. v. Del. Alcoholic Beverage Control Comm'n*, 1995 WL 656872, at *2 (Del. Super. Oct. 2, 1995).

[20] *Sekyi*, 2018 WL 4177544, at *3 (quoting *Anchor Motor Freight v. Ciabattaoni*, 716 A2d 154, 156 (Del. 1998)).

[21] *Sekyi*, 2018 WL 4177544, at *3 (quoting *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug 16, 2006)); *Gaskill v. State*, 2018 WL 3213782, at *1 (Del. Super. Jun. 29, 2018).

[22] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[23] *Sekyi*, 2018 WL 4177544, at *3 (citing *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980)).

[24] *Rooney v. Del. Bd. of Chiropractic*, 2011 WL 2088111, at *3 (Del. Super. Apr. 27, 2011).

[25] *Sokoloff v. Bd. of Med. Practice*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).

For the reasons set forth below, I find that, based on the record before me, both the Board's decision to permanently revoke Dr. Gala's medical license and the Secretary's decision to revoke Dr. Gala's CSR are based upon substantial evidence and free from legal error.

## FACTS

As discussed above, the Board and the Secretary were bound by the facts as determined by the Hearing Officer, and I am bound by the facts as determined by the Board and the Secretary, so long as the evidence of record is adequate to support those facts and the Board and the Secretary have fairly and reasonably reached their conclusions. I will briefly state the facts of record that I have considered, utilizing these standards.

This is not a case where a physician early in his career exhibited an isolated lapse in judgment or made a technical error under the regulations. Sadly, it is a case where he used his newly acquired medical license and his CSR to feed and exacerbate a patient's preexisting addiction to drugs, and to engage in inappropriate sexual relationships with that patient, continuing over an extended period of time. Such actions by a physician are anathema to the medical profession.

**Medications.**

Beginning in December of 2015, and continuing through the 2016 calendar year, the patient was taking Suboxone as a medication-assisted treatment for opioid

7

dependence.[26] After being discharged by her prior physician and filling her last Suboxone prescription from that physician, the patient presented to Dr. Gala on September 23, 2016.[27] She reported to Dr. Gala at that first visit that she had a history of addiction.[28] He recorded her primary complaint as "pain management" and listed primary diagnosis as "opioid dependence."[29] He did not, however, discuss the risks and benefits of prescribing controlled substances with the patient, the side effects of opiate treatment, or any alternate treatment options.[30] Dr. Gala did not request her prior treating records from her prior physician.[31] He simply wrote her a prescription for Oxycodone at that first appointment.[32] When the patient had difficulty getting this Oxycodone prescription covered by insurance, she texted Dr. Gala on his personal cell phone (he gave her the number at the first appointment), asking for help getting the Oxycodone prescription covered by Medicaid.[33] During a text exchange over the few days following her first appointment, Dr. Gala invited her to "come hang out," but the two did not see each other again until her next appointment.[34]

---

[26] B-11 to B-12; B-35; B-68 to B-69. References to the Appendix to Appellees' Answering Brief on Appeal will be by bates stamp number beginning with the prefix "B-."
[27] B-15; B-9; B-36; B-69 to B-70.
[28] B-71.
[29] B-10 to B-11.
[30] B-13 to B-14; B-37; B-40.
[31] B-15.
[32] B-16; B-38.
[33] B-41 to B-42.
[34] B-42.

At the second appointment on October 20, 2016, Dr. Gala increased her opioid prescription, refilling her Oxycodone and adding a thirty-day supply of Fentanyl.[35]

At her third appointment on October 28, 2016, Dr. Gala discontinued the Fentanyl (but allowed the patient to keep the unused Fentanyl), refilled her Oxycodone prescription, and prescribed OxyContin.[36]

The patient's fourth appointment on November 23, 2016 produced no treatment record.

Dr. Gala also prescribed medications for the patient that were not documented as having been provided to her in connection with documented office visits. On November 9, 2016, Dr. Gala wrote the patient a prescription for Oxycodone.[37] There is no office visit or treatment record that corresponds to this prescription. On November 30, 2016, Dr. Gala wrote the patient a prescription for Dilaudid, again without any office visit or treatment record.[38]

---

[35] B-17 to B-18. The Secretary of State has classified Fentanyl as a Schedule I controlled substance in the State of Delaware. 16 *Del. C.* § 4716(c)(6). It has a high potential for abuse, is approved for medical use only with severe restrictions, and its abuse may lead to severe psychic or physical dependence. 16 *Del. C.* § 4715.

[36] B-39; B-45; B-123 to B-124.

[37] B-21.

[38] B-21.

**Sexual Relationship.**

After her October 20, 2026 appointment, Dr. Gala and the patient met in the parking lot of a convenience store and she performed oral sex on him as he drove his car.[39] Through December of 2016, Dr. Gala and the patient met several times at Dr. Gala's house, where she would perform various sex acts with Dr. Gala (and others) and in exchange he would give her controlled substances without prescriptions.[40] Eventually, on December 10, 2016 the patient reported Dr. Gala to his medical practice and then to the police.[41]

**Other Matters in the Record.**

In his recommendations of the Hearing Officer to the Board and the Secretary, the Hearing Officer editorializes about the "re-victimization"[42] of a "vulnerable addict"[43] by Dr. Gala's counsel's cross-examination of the patient, and about the patient being a "psychological hostage"[44] of Dr. Gala. In his exceptions to the Hearing Examiner's recommendations filed with the Board and the Committee and the Secretary, and again in his appeal to this Court, Dr. Gala asserts that this is a Due Process violation under the Fourteenth Amendment to the United States Constitution. Like the Board and the Secretary below, I disregard these

---

[39] B-46 to B-48.
[40] B-49 to B-51.
[41] B-52.
[42] A-108.
[43] A-79.
[44] A-130.

characterizations as they are beyond the scope of the Hearing Examiner's mandate and expertise. These characterizations emanated only from the Hearing Officer. They did not underpin the Orders, and they play no part in my decision here.

The Hearing Officer's recommendations also contained substantial factual findings about certain medical records introduced into evidence[45] by Dr. Gala two years after the State's subpoena and one month before the hearing, and the alleged falsification thereof by Dr. Gala.[46] In his exceptions to the Hearing Examiner's recommendations filed with the Board and the Secretary, and again in his appeal to this Court, Dr. Gala asserts that this is a Due Process violation under the Fourteenth Amendment to the United States Constitution, because Dr. Gala was not adequately on notice that he would have to defend against an allegation of falsification of medical records. The Board agreed, and expressly rejected the Hearing Officer's recommended conclusion of law that Dr. Gala violated Delaware law by falsifying medical records. The Board found that, since the falsification of medical records was not pled in the State's complaint to the Board, Dr. Gala was not adequately on notice that he would have to defend against this allegation.[47] Thus, that allegation was dropped by the Board, the Board disregarded it for purposes of imposing

---

[45] The State initially objected to the introduction of these medical records as evidence, but subsequently dropped that objection.

[46] A-227 to A-229; B-5; B-7 to B-8; B-25; B-31 to B-34; B-39; B-79; B-86 to B-94.

[47] In an administrative hearing, the respondent is entitled to adequate notice of the charges, so that he can prepare his defense thereto. *Cyric W. Cain, P.A. v. Del. State Bd. of Accountancy*, 1989 WL 135766 (Del. Super. Oct. 3, 1989).

11

sanctions, and neither that allegation nor the related medical records are before me on appeal. Since Dr. Gala, and not the State, introduced the medical records at the original hearing, the Secretary pointed out that the consideration of the medical records went only to the limited issue of Dr. Gala's credibility. Like the Board and the Secretary below, I disregard the substantive recommendations of the Hearing Officer with respect to falsification of medical records, and the related evidence. These recommendations emanated only from the Hearing Officer. They did not underpin the Orders, and they play no part in my decision here.

## ANALYSIS

**Hearing Officer's Recommendations.**

As discussed above, Dr. Gala argues that the Hearing Officer committed legal error and violated his Due Process rights under the Fourteenth Amendment by characterizing the patient as a "psychological hostage" who, as a "vulnerable addict," was "re-victimized" by Dr. Gala's counsel's cross-examination of her, and by finding that Dr. Gala falsified medical records. He asks me to find that both the Board and the Secretary were so prejudiced by the Hearing Officer's recommendations that the only remedy is for me to reverse both Orders. I decline to do so. Any error attributable to the Hearing Officer was cured because, as Dr. Gala himself concedes, neither the Board nor the Secretary adopted the recommendations of which he complains (see full discussion, *post*). The Orders

12

of the Board and the Secretary -- not the Hearing Officer's recommendations -- are the only decisions under review on this appeal.

The procedure the Board follows upon receipt of the Hearing Officer's findings and recommendations[48] closely tracks the APA-created procedure utilized by the Secretary, and contemplates delegation to a subordinate body for holding evidentiary hearings.[49] Pursuant to the APA, whenever a subordinate body, such as the Hearing Officer in this case, presides over a formal hearing, "the subordinate shall prepare a proposed order for the consideration of the agency which shall include: (1) [a] brief summary of the evidence and recommended findings of fact based upon the evidence; (2) [r]ecommended conclusions of law; and (3) [a r]ecommended decision."[50]

Any party against whom a "case decision" has been decided may appeal such decision to the Court,[51] defining "Court" as the Superior Court of the State of Delaware.[52] The provisions of the APA, including those regarding judicial review, apply to the Board.[53] Any holder of a CSR aggrieved by a decision of the Secretary

---

[48] 29 *Del. C.* § 8735(v)(1)d.
[49] *See* 29 *Del. C.* § 10126.
[50] 29 *Del. C.* § 10126(a). Further, the APA, like 29 *Del. C.* § 8735(v)(1)d, requires that when the subordinate body's "proposed order is submitted to the agency, a copy shall be delivered to each of the other parties who shall have 20 days to submit in writing to the agency exceptions, comments and arguments respecting the proposed order." 29 *Del. C.* § 10126(b).
[51] 29 *Del. C.* § 10102(4).
[52] 29 *Del. C.* § 10142(a).
[53] 29 *Del. C.* § 10161(a)(22).

may appeal such decision to the Superior Court.[54] A "case decision" means the final order issued by the Board and the Secretary, not the findings and recommendations of the Hearing Officer.[55] The opinion of a subordinate body "does not constitute a 'case decision' under the Administrative Procedures Act. Rather, it is a proposed order."[56] A hearing officer's recommendation to a Board is "nothing more than [a] recommendation of action ... It [i]s neither properly authenticated nor [does] it contain the formalities required of a final order."[57] Only final orders of an agency may be appealed; e.g., an appeal of a decision of the Industrial Accident Board, short of a final award, will be dismissed as interlocutory.[58]

---

[54] 16 *Del. C.* § 4736(b).

[55] *Daimler Chrysler Corp. v. Del. Dept. of Ins.*, 2007 WL 914909, at *2 (Del. Super. Jan. 23, 2007) (holding that because a hearing officer only makes recommendations to the Insurance Commissioner it is only the Commissioner's decision, after consideration of those recommendations, that is the final determination subject to judicial review under the APA and dismissing the Appellant's appeal of the hearing officer recommendations in that case as impermissibly interlocutory).

[56] 29 *Del. C.* § 10126(a); *Quaker Hill Place v. Saville*, 523 A.2d 947, 952 (Del. Super. 1987).

[57] *Id.* at 952-953. 29 *Del. C.* § 10128(b) provides that "[e]very case decision of any agency shall be incorporated in a final order which shall include, where appropriate: (1) [a] brief summary of the evidence; (2) [f]indings of fact based upon the evidence; (3) [c]onclusions of law; (4) [a]ny other conclusions required by law of the agency; and (5) [a] concise statement of the agency's determination or action on the case." The formalities of a final case decision required by the APA continue in subsection (c), which requires "every final order . . . be authenticated by the signatures of at least a quorum of all agency members, unless otherwise provided by law." 29 *Del. C.* § 10128(c).

[58]*Clendaniel v. McDaniel Constr., Inc.*, 787 A.2d 100, 100 (Del. 2001); *Eastburn v. Newark Sch. Distr.*, 324 A.2d 775 (Del. 1974).

Thus, the Orders of the Board and the Secretary are the only "case decisions" subject to my review. I do not accept Dr. Gala's invitation to relitigate the Hearing Officer's recommendations.

**Editorializing by Hearing Officer**

As discussed above, Dr. Gala asserts that the Hearing Officer's statement that the patient was Dr. Gala's "psychological hostage" and was a "vulnerable adult" who was "victimized again" by Dr. Gala's counsel's cross-examination "were made without any substantiation in the record," and that those statements informed the Orders of the Board and the Secretary. The record, however, does not show that either the Board or the Secretary relied on those statements in reaching their Orders. Indeed, the Board expressly rejected "the hearing officer's characterization of S.G. as a 'psychological hostage' insofar as this diagnosis is outside of the hearing officer's expertise."[59] The Board's rejection of the Hearing Officer's statements cured any legal error by the Hearing Officer.[60]

**Medical Records**

As discussed above, there was considerable time spent by the Hearing Officer discussing the authenticity of certain later-produced medical records introduced into

---

[59] A-285.
[60] *Bilski v. Bd. of Med. Licensure & Discipline*, 2014 WL 3032703 (Del. Super. Jun. 30, 2014), *aff'd,* 115 A.3d 1214 (Del. 2015); *see also Leonard v. Del. Bd. of Nursing*, 2013 WL 422904 (Del. Super. Jan. 30, 2013)

15

evidence by Dr. Gala. However, the Board expressly rejected the Hearing Officer's recommended conclusion of law that Dr. Gala violated Delaware law by falsifying medical records.[61] Because falsifying medical records was not pled in the State's complaint, Dr. Gala was not adequately on notice that he would have to defend against this allegation.[62] The Board stated that Dr. Gala would not be disciplined for falsifying medical records because he was not given adequate notice that he was charged with a disciplinable offense. Thus, despite the Hearing Officer's erroneous conclusion of law, the Board's express rejection of that legal conclusion cured any legal error by the Hearing Officer. Moreover, the contested medical records are not in the record before me for review. If anything, as the Secretary explained in his Order, "the issue of the patient's medical records, created by Dr. Gala after treatment had been rendered, went to the issue of Dr. Gala's credibility."[63]

**Substantial Evidence**

I must affirm the Board's and the Secretary's Orders if they are supported by "substantial evidence" and free from "legal error."[64] "Substantial evidence is evidence which affords a substantial basis of fact from which the fact in issue can

---

[61] A-285.

[62] *Cyric W. Cain, P.A. v. Del. State Bd. of Accountancy, supra.*

[63] A-288.

[64] 29 *Del. C.* § 10142(d); *Morris v. Real Estate Comm'n,* 2008 WL 1735072, at *1 (Del. Super. Apr. 11, 2008).

16

be reasonably inferred."[65] "The Court does not re-weigh the evidence, nor does the Court substitute its judgment for the factual determinations made by the Board … below."[66]

**Medications**

Substantial evidence exists on this record to support the Board's and the Secretary's findings that Dr. Gala engaged in inappropriate prescribing practices with the patient. Dr. Gala admits that he wrote six prescriptions for Oxycodone, Fentanyl, OxyContin and Dilaudid for her from September 23, 2016 to December 20, 2016.[67] Dr. Gala agreed that if he accepts a patient with a prior record of treatment, obtains and reviews the prior treatment records, and performs an assessment, diagnosis, examination, or writes a prescription, it should be documented in the patient's record.[68] Dr. Gala admits that the patient told him she had a history of addiction and opioid dependence and that she was taking Suboxone at her first appointment.[69] Dr. Gala testified that he classified the patient as a moderate risk patient according to the opiate risk tool.[70] Nevertheless, he admitted that the record

---

[65] *McCain v. Del. Council on Real Estate Appraisers,* 2009 WL 1515594, at *2 (Del. Super. May 29, 2009) (internal citations omitted).

[66] *Hoopes v. Del. Council of Real Estate Appraisers,* 2006 WL 3308203, at *1 (Del. Super. Oct. 19, 2006) (internal citations omitted).

[67] B-63 to B-64.

[68] B-66 to B-67.

[69] B-71 to B-72.

[70] B-72 to B-73.

from her initial appointment was lacking documentation of a treatment plan, missing any discussion of other pain management treatment, and did not reflect any risk/benefit analysis.[71] Dr. Gala conceded that he never reviewed the patient's prior treatment records from the physician who was prescribing her Suboxone before she first presented to him.[72]

When Dr. Gala wrote the patient a prescription for Fentanyl, he admits that her medical record contained no discussion of risks and benefits of additional opioids and no documentation of any discussion of additional treatment other than medication.[73] Dr. Gala admitted he wrote the patient a prescription for Oxycodone on a Sunday, but there is no medical record anywhere in the patient's file for this or any other date.[74] For her fourth office visit, Dr. Gala conceded there was almost nothing noted in the patient's file.[75] Dr. Gala admitted that, by her fourth appointment, the patient was overusing her medication and beginning to show signs of "aberrant drug-seeking behavior."[76] Nevertheless, seven days later he wrote her a prescription for Dilaudid.[77] Dr. Gala admitted that the medical records include no

---

[71] B-74 to B-75.
[72] B-84 to B-85.
[73] B-77.
[74] B-80.
[75] B-78 to B-79.
[76] B-96 to B-97.
[77] B-97 to B-98.

treatment note at all for that date.[78] Dr. Gala admits to writing a December 20, 2016 prescription for Oxycodone without an office visit.[79]

The State's expert witness, Dr. Thomas, whom I find imminently credible, opined that the prescriptions written for the patient by Dr. Gala were not for any legitimate medical purpose.[80]

On this record, I find that there is substantial evidence to support the Board's finding that Dr. Gala violated four statutes and the Board's Regulations, as follows. First, he engaged in conduct constituting a crime substantially related to the practice of medicine[81] by delivering controlled substances to the patient for other than a therapeutic medical purpose. Second, he engaged in dishonorable or unethical conduct likely to deceive, defraud or harm the public[82] by failing to follow the Board's regulations regarding the prescribing of controlled substances.[83] Third, he used, distributed, or issued a prescription to the patient for other than a therapeutic purpose.[84] Fourth, his behavior over the four-month period constituted a pattern of negligence in the practice of medicine.[85]

---

[78] B-81 to B-83.
[79] B-64 to B-65.
[80] A-290 to A-291.
[81] 24 *Del. C.* § 1731(b)(2).
[82] 24 *Del. C.* § 1731(b)(3).
[83] Board Regulation 8.1.12; Board Regulation 18.
[84] 24 *Del. C.* §1731(b)(6).
[85] 24 *Del. C.* § 1731(b)(11).

On this record, I further find that there is substantial evidence to support the Secretary's finding that Dr. Gala violated three statutes and the Secretary's Controlled Substance Regulations, as follows. First, Dr. Gala failed to maintain effective controls against diversion of controlled substances.[86] Second, he failed to comply with applicable law regarding the prescribing and dispensing of controlled substances.[87] Third, he failed to comply with the Secretary's Controlled Substance Regulations[88] by violating the regulation requiring that every controlled substance prescription be for a legitimate medical purpose.[89]

**Sexual Relationship**

At first Dr. Gala denied any sexual relationship with the patient, but now admits that there was a sexual relationship but that it was consensual.[90] I do not find this credible in light of the patient's extensive testimony about her repeated attempts to get off opioids and to end her sexual relationship with Dr. Gala. She pleaded with Dr. Gala more than a few times to go back to Suboxone and to stop their sexual relationship, but he persisted.[91]

One example of Dr. Gala's intimidation of the patient is the evening he requested her to engage in sex acts with him and a female prostitute. She told him

---

[86] 16 *Del. C.* § 4735(b)(1).
[87] 16 *Del. C.* § 4735(b)(2).
[88] 16 *Del. C.* § 4735(b)(6).
[89] Controlled Substance Regulation 4.2.1.
[90] B-99 to B-102.
[91] B-59.

20

that she did not want to do this, and he offered to pay for her Oxycodone if she would do so. After ingesting alcohol and a number of pills left for her in an unmarked bottle on Dr. Gala's kitchen counter, she engaged in the threesome. The next day, Dr. Gala wrote her his personal check to pay for the Oxycodone.[92]

The patient's testimony about this evening is corroborated by the testimony of two staff members who then worked for Dr. Gala. They testified that Dr. Gala himself recounted to them the events of that evening with the two women, with only minor inconsistencies.[93] Only Dr. Gala denied these conversations occurred.

Dr. Gala also complains that the testimony of Dr. Thomas concerning the power dynamic between doctor and patient was only general in nature as to the asymmetric power position between patients and their doctors. However, I read Dr. Thomas' testimony to generally condemn *any* sexual relationship between patient and doctor, which, when the dynamic of the patient's addiction to controlled substances is added to the mix, is beyond the pale.[94]

I find that the patient's testimony, the testimony of the two staff members, and the testimony of the expert physician constitute substantial evidence to support a finding that Dr. Gala engaged in an inappropriate sexual relationship with his patient.

---

[92] B-55 to B-57.
[93] B-60 to B-62.
[94] B-23 to B-24; A-294 to A295.

On this record, I find that there is substantial evidence to support the Board's finding that Dr. Gala violated two statutes and the Board's Regulations, as follows. First, Dr. Gala engaged in unethical conduct[95] by virtue of his sexual relationship with the patient. Second, Dr. Gala engaged in dishonorable or unethical conduct likely to deceive, defraud or harm the public[96] because his conduct constitutes "exploitation of the doctor/patient privilege for personal gain or sexual gratification," as well as "sexual impropriety including, but not limited to, sexually suggestive behavior, gestures, expressions, statements and a failure to respect his patient's privacy" under Board Regulations.[97]

On this record, I further find that there is substantial evidence to support the Secretary's finding that Dr. Gala engaged in acts inconsistent with the public interest.[98]

**Legal Error**

I review the Board's and the Secretary's Orders for legal error *de novo*. In doing so, I must review whether the "mandates of due process and fairness" were adhered to, whether the Board and the Secretary "correctly allocate[d] the burden of proof . . . and that its findings of fact, inferences, deductions and conclusions

---

[95] 24 *Del. C.* § 1731(b)(1).
[96] 24 *Del. C.* § 1731(b)(3).
[97] Board Regulations 8.1.2 & 8.1.3 (clarifying the definition of "dishonorable or unethical conduct" as that term is used in 24 *Del. C.* § 1731(b)(3)).
[98] 16 *Del. C.* § 4735(b)(8).

22

are . . . supported by substantial evidence . . . [and] are . . . the product of an orderly and logical deductive process."[99]

The legal errors asserted by Dr. Gala (with respect to editorializing by the Hearing Officer and the allegation of falsifying medical records) were appropriately dealt with by the Board and the Secretary below, and are discussed fully above. Dr. Gala asserts no errors in the procedures that were followed by the Hearing Officer, the Board, the Committee and the Secretary under the applicable statutes and regulations. I find no other errors of law in the record before me.

**Propriety of Sanctions**

Lastly, Dr. Gala asserts that the Board[100] and the Secretary[101] imposed sanctions (permanent revocation of his Delaware medical license and revocation of his Delaware CSR, respectively) which are far more severe than those warranted by the facts,[102] and which resulted at least in part from the Board's and the Secretary's consideration of evidence improperly contained in the Hearing Officer's recommendations. As I have pointed out above, however, both the Board and the Secretary rejected that evidence on the merits.

---

[99] *Quaker Hill Place v. Saville*, 523 A.2d 947, 967 (Del. Super. 1987).
[100] A-257 to A-258; A-260.
[101] A-278 to A-279.
[102] Dr. Gala does not assert that the sanctions exceed the authority of the Board or the Secretary.

In determining the appropriate sanctions, the Board considered Dr. Gala's assertion of a wide range of mitigating factors which are available to it under its enabling statutes and regulations.[103] In addition, the Board considered the State's assertion of a wide range of aggravating factors which are available to it under its enabling statutes and regulations.[104] The choice of a sanction by an administrative agency, if based on substantial evidence and not outside its statutory authority, is a matter of discretion to be exercised solely by the agency. In reviewing for an abuse of discretion, the question is not whether I would have imposed these sanctions, but whether such sanctions are so disproportionate to the allegations in light of all the facts as to be "shocking to one's sense of fairness."[105] They are not. I defer to the expertise and discretion of the Board and the Secretary.

## CONCLUSION

For the reasons set forth in this Opinion, the final order of the Delaware Board of Medical Licensure and Discipline permanently revoking Dr. Gala's medical license, and the revocation of Appellant's controlled substances registration by the

---

[103] A-257 to A-258.
[104] A-286.
[105] *Warmouth v. Del. State Bd. of Examiners in Optometry*, 514 A.2d 1119, 1123 (Del.Super.1985) (Internal citations omitted); *Decker v. Del. Bd. Of Nursing*, 2013 WL 5952103 (Del. Super. Nov. 7, 2013).

24

Delaware Secretary of State, issued on June 4, 2019 and June 18, 2019, respectively, are **AFFIRMED**.

**IT IS SO ORDERED.**

Craig A. Karsnitz

cc:     Prothonotary's Office

FILED PROTHONOTARY
SUSSEX COUNTY
2020 APR 31 A 11: 01

25